MAHLON D. OGDEN *vs.* JEFFERSON W. GLIDDEN AND JOHN LOCKWOOD et al, Appellants.

APPEAL FROM CIRCUIT COURT, MILWAUKEE COUNTY.

Heard June 29.]　　　　　　　　　　　　[Decided July 11, 1859.

*Mortgage—Foreclosure—Lien—Judgment —Finding—New Trial—Answer—Equity.*

The provisions of the "act relating to foreclosure of mortgages and the sale of land under such foreclosure," approved May 15th, 1858, and usually known as the "mortgage stay law," do not apply to an action for the foreclosure of a mortgage, which was pending in the court at the time of its passage; but they do apply to all cases in which judgment had been rendered, and sale had not been made.

In an action for the foreclosure of a mortgage, if it appear by answer that the mortgagor has alienated portions of the mortgaged premises to third parties, the judgment should reserve the lots so sold until the residue of the premises had been sold; and if such lots must be sold, then they must be sold in the inverse order of their alienation by the mortgagor.

So if, in an action of foreclosure against G. and L., as mortgagors, it appears that G. is possessed of a portion of the premises in his own right, and L. of

Ogden vs. Glidden et al.

another portion, and that a third portion was held jointly; and it also appears that L. personally owes the mortgage debt, or is equitably bound to pay the same; the judgment should be entered that the interest of L. be first sold, secondly, the joint interest, and lastly the interest of G.

Where a question of fact is tried by the court, its decision must be given in writing, in accordance with chap. 132, § 19, Rev. Stat.; and that if it be not so given, and an exception is taken for that reason, the judgment will be reversed. This rule applies as well to cases in equity as at law.

The case of *Sayre vs. Langton*, 7 Wis. Rep., 214, considered and approved.

Where the separate answers of several defendants set up equities between the defendants themselves, though the court will take cognizance of such equities in making its decision; yet they do not form an issue which the plaintiff is called upon to controvert.

This was an action brought to foreclose a mortgage by the respondent against the appellants, as subsequent purchasers of the mortgaged premises, who had assumed the mortgage debt, together with the original mortgagors and sundry subsequent purchasers and incumbrancers. The complaint is in the usual form, demanding judgment for $8,600, and interest, from January 26th, 1852, for a sale of the mortgaged premises to make the amount with costs, for judgment for deficiency, if any, and for general relief.

To this complaint the defendant Calkins put in his answer, showing that he had become the owner in fee of Lots 8, 9, and 10, in Block 7, in Glidden & Lockwood's Addition to the city of Milwaukee, which are a part of the mortgaged premises, and that the plaintiff had, by deed duly acknowledged and delivered, released those three lots from the lien of his mortgage, and demands that those lots be omitted and excepted in any judgment of foreclosure and sale that might be rendered, and also sets up sundry other matters.

And the defendants, Mahler & Wendt, put in their joint answer to the complaint, showing that the mortgaged premises constitute Glidden & Lockwood's Addition to Milwaukee; that the defendants, Glidden & Lockwood, who were the owners of the whole of the premises in fee, subject only to the mortgages conveyed by full covenant warranty deed to Wendt, Lots 3, 4, 5, 6, and 7, and to Mahler, Lots 8, 9, 10, 11, and 12, all in Block No. 3, on the 30th day of October, 1854; that those were the first conveyances made by Lockwood & Glidden, or either of them, in the tract, and that the entire balance remained in them until after they had so conveyed with war-

anty to Mahler & Wendt; and demanding that in any judgment of foreclosure and sale, their lots be reserved till all the remainder of the premises shall have been exhausted without making the amount.

The defendants, Fernow & and Lienan, put in similar answers, claiming, upon like grounds, that Lots 5, 6, 7, and 8, in Block 21, in said addition, should be withheld from sale till all of the mortgaged premises, except the lots so sold to Mahler & Wendt, and Lot No. 19, in Block No. 9, in said addition, should have been exhausted, and demand judgment accordingly.

The defendant, Rogers, receiver, &c., puts in a similar answer, showing, upon like grounds, that Lot 19, Block 9, should be withheld from sale till all of the premises, except the lots so sold to Mahler & Wendt should have been exhausted, and demands judgment accordingly.

The defendants, Jefferson W. Glidden and John Lockwood, put in their answer, alleging that they became by purchase the owners in fee of the whole of the mortgaged premises, subject only to the mortgage; that the same now constitute Glidden and Lockwood's Addition to Milwaukee; that they have, since platting the addition, conveyed away by warranty deed, all the lots above particularly described, to sundry persons; also the northeasterly half of block 6; that on October 30th, 1854, they, being still seized in fee and the owners of the whole of the mortgaged premises, except the lots sold, free and clear from other liens than the mortgage, made and perfected an exchange of property, by deeds duly executed and delivered, such that Glidden became seized of the whole of block No. 20, and of lots 1, 9 and 10, and the southerly half of lot 8, in block No. 6, having a warranty deed from Lockwood, of his undivided half of the same; and Lockwood became seized of the whole of block No. 2, having a warranty deed from Glidden of his undivided half thereof; that Glidden continued to hold the whole of block 20, and of lots 1, 9, 10, and the southerly half of lot 8, in block 6, free from all incumbrance except the mortgage of the plaintiff; that the amount due and unpaid on the mortgage was only $7,600 and interest from July 1, 1854; that when the principal sum with interest became due, Glidden placed in the hands of Lockwood five thousand dollars ($5,000) in money, being more than sufficient to pay that portion, to wit: one-half of the mortgage debt which equitably belonged to him to pay,

and instructed Lockwood to apply the same to the payment and satisfaction of the bond and mortgage; but that Lockwood diverted the moneys from the purpose for which they were so placed in his hands, and employed the same for other purposes of his own, and therefore became bound in law, and promised expressly to pay off the whole of the mortgage debt, and keep Glidden and his half of the premises free from the same, and that his own part or share of the premises should be first exhausted before Glidden's share should be touched, so that as between these defendants in equity, the share of Lockwood in the premises should be entirely exhausted to make the debt, before any part of Glidden's share should be sold therefor; and that lots 8, 9 and 10, in block 7, had been conveyed away by warranty deed and duly released of record from the lien of the plaintiff's mortgage, and demanding that judgment be rendered only for the amount actually due and unpaid, that any sale that should be ordered, be made of the several lots in the inverse order of alienation by these defendants as aforesaid; that lots 8, 9 and 10, in block 7, be excepted from any order of sale, and that the share of Glidden be saved from sale, so far as may be, consistently with the principles of equity, and for costs.

There was no reply to any of these answers.

July 23, 1858, the cause came on for trial, and the plaintiff read in evidence the bond, mortgage and assignment of the same to him, at the same time admitting that the amount unpaid thereon was correctly stated in the answer of Glidden and Lockwood, and upon computation made and reported by a referree appointed for that purpose, the court rendered judgment of foreclosure and sale in the case in the usual form, to make the sum of $9,761 98, for principal and interest on the mortgage debt, and $395 92 for costs, embracing the sum of $250 as a special allowance made by the court for costs, under the statute, and directing, among other things, that " the mortgaged premises in the complaint described, or so much thereof as might be necessary and as might be sold separately without prejudice to the interest of the owners thereof, be sold at public auction, in the county of Milwaukee, by the sheriff; that the sheriff give public notice of the time and place of the sale, by advertising the same in some newspaper printed in the city of Milwaukee, for six weeks successively, once in each week for the three first weeks, and twice in each week for the last three weeks," &c.; also direct-

ing that the sheriff make a report of such sale, and file it with the clerk of the circuit court, with all convenient speed; that if the proceeds of such sale be insufficient to pay the amount so reported due the plaintiff, with the interest and costs, the sheriff specify the amount of such deficiency in his report of sale, and that the defendants, Townsend, Diederichs, Alfter and Wendt, pay the same to the plaintiff," &c., and "that the defendant and all persons claiming under them, &c., be barred and foreclosed of all right, title, interest and equity of redemption in the mortgaged premises so sold, or any part thereof."

And the judgment of foreclosure and sale also further particularly directed that all of the mortgaged premises except the parcels next hereinafter particularly described, be sold before those parcels so hereinafter described, and that after all the other portions of the premises should have been sold, the sheriff should expose for sale and sell these parcels in the following order, as being in the inverse order of their sale and alienation by Glidden and Lockwood, to wit: Lot 19, in block 9; next, lots 3, 4, 5, 6, 7, 8, 9, 10, 11 and 12, in block No. 3; next, lots No. 5, 6, 7 and 8, in block No. 21; and, finally, the north-east half of block No. 6.

Whereupon, and before written notice of the rendition of the judgment, these appellants excepted to the same in writing, upon the following points, to wit:

1. In that the judge did not make a decision in writing before the judgment, and state therein separately: "1st. The facts found by him; and, "2d. The conclusions of law thereon;" and therefore there was no decision upon which a judgment could properly be entered.

2. In that the mortgaged premises are therein directed to be sold, upon an advertisement for the period of six weeks only, instead of six months, as required by law.

3. In that the mortgaged premises are not therein directed to be sold in the order required by law, and the practice of the court in such cases.

4. In that said judgment is generally erroneous and against the law and the evidence, and ought to be reversed.

These appellants take their appeal to the supreme court to have said judgment reversed or corrected, upon the above grounds.

*Waldo & Ody,* for the appellants.

*Brown & Ogden,* for the respondent.

Ogden vs. Glidden et al.

*By the Court*, Dixon, C. J.    This case presents three questions, namely:

1. Whether the provisions of the act of the legislature entitled " an act relating to foreclosure of mortgages, and the sale of land under such foreclosure," approved May 15th, 1858, usually known as the mortgage stay law, now repealed, applied to an action for the foreclosure of a mortgage which was *pending* at the time of its passage.

2. Whether the judgment, after having reserved from the sale the lots which the defendants, Glidden and Lockwood, had conveyed to third parties, until the residue of the premises had been sold, and provided that those lots, when sold, should be sold in the inverse order of alienation, was erroneous, in not also reserving the lots of which Lockwood, by way of exchange, conveyed his interest to Glidden, October 30th, 1854.

3. Whether the judgment is erroneous, for the reason that the circuit judge did not give a decision in writing, stating separately the facts found, and the conclusions of law thereon.

We think the first question a very plain one, that the act of May 15th, 1858, the provisions of which are familiar to every member of the profession, did not apply to or affect actions pending at the time of its passage.    This action, which is for the foreclosure of a mortgage, was commenced February 24, 1858, and was *pending* at the time of the passage of the act.    The first section of the act provided in substance, that in all actions and proceedings at law, *thereafter* commenced, for the foreclosure of mortgages, the defendant should have six months time after the service of process to answer, &c.    The second section provided that whenever in *such* action or proceeding, judgment should be entered, or an order made by the court for the sale of the mortgaged premises, it should be for their sale upon six

months notice thereof, as thereinafter provided; and that in all cases where, *before* the passage of that act, judgment of foreclosure and sale *had* been rendered, the mortgaged premises should be sold only upon six months notice of the time and place of sale. The other sections of the act have no particular bearing upon the question now before us.

Adopting the cardinal rules, that the acts of the legislature are to be construed according to the intent of the legislature which passed them; that in ascertaining that intent we are first to look to the language in which they have spoken; and if that language is plain and unambiguous, interpretation is not allowable, we do not see how any doubt could have arisen upon this act. It is a question of grammatical, not of legal construction, and depends for its determination upon the principles of our language.

With a view to the operation of the act, actions for the foreclosure of mortgages were divisible into three classes, viz: past actions, or those in which judgments had been rendered but not executed; actions pending; and actions to be thereafter commenced. It is evident by the act, that the legislature recognized and acted upon this classification, and by it provided for the first and third classes. The first section refers in direct terms to actions thereafter to be commenced, and provides for the time to answer. The second section provides for the manner of sale upon judgments in *such* actions, and in actions where judgments *had* been obtained, but not executed. The word "such" in the first line of the second section must be taken in its ordinary acceptation to mean, "of that kind," "of the like kind," and to refer to the class of actions specified in the first section. It may be *that the* failure to extend the provisions of the act to actions pending at the time of its passage was a sort of legislative *casus omissus*, and that had their attention been called to it, the legislature would have supplied it; but where, as in this case,

Ogden vs. Glidden et al.

the language of the legislature is clear and unequivocal, it is not for the courts to extend the operation of a statute to any subject not embraced in it.

In respect to the second question, however, we are of opinion that the judgment is erroneous. The defendants Glidden and Lockwood answer jointly, and it appears from their answer that they were tenants in common of the mortgaged premises, by title derived at the same time, by the same deed; that they purchased the premises *subject to the mortgage,* and are equitably bound for its payment; that after their purchase, they laid them out into a village plat, known as Glidden & Lockwood's addition to Milwaukee, and at different times, sold and conveyed by warranty deed various lots to third parties, which are now owned by the other defendants in the action; and that on the 30th of October, 1854, after the sale and conveyance of the lots to third persons, they made an exchange and conveyance between themselves in such manner that Glidden became the sole owner of block 20, and lots 1, 9 and 10, and the southerly half of lot 8, in block 6; and Lockwood the sole owner of block 2. It appears from the bill of exceptions, that these statements of the answer were on the trial admitted to be true. Glidden and Lockwood still remain tenants in common of the residue of the mortgaged premises.

They further allege in their answer that, at the time the installment of $7,600, for which the judgment in this action was rendered, became due, Glidden placed in the hands of Lockwood $5,000 in money, that being more than sufficient to pay the one-half of the mortgage debt, which equitably belonged to him to discharge, with instructions to Lockwood to apply the same in payment of the bond and mortgage, but that Lockwood employed the same for purposes of his own, and therefore become bound and expressly promised Glidden to pay off the whole mortgage, and to keep his, Glidden's,

Ogden vs. Glidden et al.

share of the premises free from it. They ask in the answer that Lockwood's share of the premises shall be first exhausted before Glidden's share is resorted to for the purpose of paying the mortgage debt. These last allegations of the answer were neither admitted nor proved at the trial.

The judgment provides that the whole of the mortgaged premises, except the lots sold to third parties, shall be first exhausted, and that those lots shall be sold in the inverse order of the time of the transfers. On the part of the plaintiff it is contended that the prayer of the answer was properly denied, because there was no proof to sustain it, and because it shows no equities on the part of Glidden which the court is bound to notice; that it is a statement of a private transaction or dealing between Glidden and Lockwood, which cannot be set up to influence the mode of sale, and which the court is not bound to look into or settle in this case. We think, however, that a moment's consideration of the object of such an answer, and of the reasons for allowing it to be put in, will show that these objections are untenable.

It is a well settled rule that courts of equity, in cases where there is no dispute, will look into and settle equities as between different defendants. We say in cases where there is no dispute, because we do not wish to be understood as saying, that in cases where the equities or rights are disputed or contested as between different defendants, that the court will, at the risk of putting the plaintiff to great expense or delay, stop to determine them; for, on the contrary, there is high authority for saying that it will not do so. But in cases free from dispute or doubt, it is always done. Out of this general rule has arisen the rule in relation to marshalling securities in cases like the present, which is in substance, that where there is a lien upon different parcels of land for the payment of the same debt, some of which still belong to the person *owing and equitably bound to pay the debt;* and others are owned by

third persons; that as between him and them, his part of the land shall be first chargeable with the debt. It is for the purpose of enabling the courts to carry out these principles, and not in any way to defeat or impair the rights of the plaintiff, that answers like the present are allowed to be made. They are not matters upon which the plaintiff can take issue. And when the defendants, for and against whom the equities are sought to be raised, admit or join in asserting the facts, proof becomes unnecessary. It is a matter of no concern to the plaintiff whether the statements are true or false. He is pursuing a remedy for the collection of his debt to which alone he is entitled, and it is his right, if need be, to have the *whole* of the mortgaged premises sold for that purpose, but the order as to time, in which the several parcels or tracts are sold, is to him quite immaterial.

We think that, admitting the payment of the $5,000, by Glidden to Lockwood, as stated in their answer, Glidden has an equity which entitles him to have the parcels of the mortgaged premises, of which he is the sole owner, reserved until Lockwood's interest is exhausted. These remarks of course apply only to those portions of the premises of which Glidden is sole owner, and not to that portion of which he and Lockwood are still tenants in common; for, as to that portion, we believe it is a well settled principle, that a court will not, under such circumstances, decree a sale of undivided moities separately. *Frost vs. Frost,* 3 Sandford Ch. R., 188.

Upon the third question, we suppose that since the decision of this court in the case of *Sayre vs. Langton,* 7 Wis. Rep., 214, it must be taken to be the settled doctrine, that in all cases where a question of fact is tried by the court, its decision must be given in writing in accordance with § 19 of chapter 132 of the Revised Statutes, and that if it be not so given, and an exception is taken for that reason, the judgment will be reversed. This is the settled rule in Missouri under

a statute precisely like ours. *Farrur vs. Lyon,* 19 Mo. R., 122 ; *Pierce vs. Barnes,* 22 id., 577; *Pierce vs. Roberts,* id., 583.

Although in cases in equity, where we review the facts, as well as the law, the reason for requiring such written decision does not seem to exist, yet, inasmuch as this court in the case above referred to, clearly intimated that such would be the rule, we do not feel at liberty to depart from it. It is one of those questions which it is not so important how it is settled, as that it should be settled so that the profession may understand it.

It is clear in the present case, that the several matters set up in the answers for the purpose of showing the equitable rights of the defendants as between themselves, do not form an issue. Upon examining the pleadings we find it alleged in the complaint, that the defendants had failed to comply with the condition of the bond and mortgage, by omitting to pay the sum of $1,000 and the interest on the whole debt which became due on the 1st day of July, 1852, and that that installment, together with the interest, still remained due and unpaid. This allegation of the complaint was directly traversed by the answer of Glidden and Lockwood, and the payment of the same averred. So far at least there was an issue joined upon material facts, of which a strict compliance with the statute would require a finding in writing. The attention of the attorney might however well have been diverted from this issue, for the reason, as appears from the bill of exceptions, the point was not contested, the plaintiff having admitted that the averments of the answer were true, and that the $1,000 and interest had in fact been paid.

The judgment of the court below must be reversed, and the cause remanded for further proceedings in accordance with this opinion.