| | |
|---|---|
| 91 | 374 |
| 93 | 425 |
| 91 | 374 |
| 108 | 659 |
| 91 | 374 |
| 111 | 2449 |
| 91 | 374 |
| 114 | 453 |
| 91 | 374 |
| 115 | 474 |
| 116 | 1212 |

HARTFORD, Administratrix, Respondent, vs. THE NORTHERN PACIFIC RAILROAD COMPANY, Appellant.

*October 25 — November 8, 1895.*

*Railroads: Injury causing death of employee: Negligence of fellow-servant: Construction of statute: "Superintendent:" Foreman of repair shops.*

1. The foreman of repair shops of a railway company is not a "superintendent" within the meaning of ch. 438, Laws of 1889 (sec. 1816a, S. & B. Ann. Stats.), which provides that every railroad corporation shall be liable for damages sustained by any employee, without contributory negligence on his part, "when such damage is caused by the negligence of any train dispatcher, telegraph operator, superintendent, yard master, conductor or engineer, or of any other employee, who has charge or control of any stationary signal, target point, block or switch," — the intent of the statute being to provide a remedy for the negligence of officers and employees having to do with the movement of trains and cars.

2. The foreman of repair shops was merely a fellow-servant of an employee therein while engaged, as a volunteer and outside of the line of his duty as foreman, in assisting such employee to turn the wheels of an engine which was being repaired.

APPEAL from a judgment of the circuit court for Waukesha county: A. SCOTT SLOAN, Circuit Judge. *Reversed.*

This action is for the recovery of damages for the alleged negligent killing of the deceased, Hugh Hartford, while he was engaged in defendant's employ in its repair shops at Waukesha, Wisconsin. The facts upon which it is claimed defendant is liable are as follows:

At the time of the occurrence the deceased was, and had been for some time prior thereto, a machinist employed in the repair shops. Charles W. Tait was the foreman of the shops, whose duty it was to oversee the men and see that their work was done properly. George Burdette was a pit boss or subforeman in the shops, having several employees working under him, including the deceased and an apprentice or machinist's helper, August Luchtenberger. There

was a broken-down engine in the shops to be repaired, and it became necessary, in doing the work of such repair, to turn the center pair of large drive wheels, on the track, in order to draw a pin that fastened the side or connecting rod. Tait directed the pit foreman, Burdette, to send a man to do this work. Such work required the said center pair of wheels to be slipped on the track and turned half way around. Tait suggested to Burdette to send Hartford and Luchtenberger, which he did. There is evidence tending to show that deceased and Tait were at the engine together before Luchtenberger arrived, and that they tried to slip the wheels on the track; Hartford, using a pinch bar, applied to the wheels, while Tait was in the cab putting on steam, but they were unsuccessful. Hartford then went to get another bar, and in the meantime Luchtenberger arrived, and he and Tait tried to slip the wheels; the latter putting steam on as before, while Luchtenberger applied the bar, but without success. Hartford returned with another bar, which he put in the wheel where Luchtenberger had been prying with his bar, and the latter, by Hartford's direction, applied his bar to another part of the wheel. While they were thus prying, in the endeavor to slip the wheel, Tait again put the steam on, and the wheel then suddenly turned, causing the side rod to rise and strike Hartford's bar and drive the end of it against his body near the heart, resulting in his death.

At the time Tait put on the steam, as last stated, it made considerable noise, so that it was distinctly heard by Luchtenberger, who knew that Tait was in the cab, and knew, from the noise and otherwise, that he was putting on the steam; but it is claimed that Hartford was unconscious of these facts, though, as stated, the evidence tends to show that before he went for the bar he knew that Tait was in the cab, and they together had been trying to slip the wheels by the joint use of steam and the bar. It was common to thus

apply the steam for the purpose of aiding to turn the wheels on the track, as it was done at the time of the occurrence complained of.

There was a special verdict to the effect that the defendant railroad company was guilty of negligence in turning on steam without giving proper warning to the deceased; that the latter was not guilty of any contributory negligence; and assessing plaintiff's damages at $5,000. From the judgment entered on this verdict in favor of the plaintiff, the defendant appeals.

*Thomas H. Gill,* for the appellant.

For the respondent there was a brief by *Ryan & Merton,* and oral argument by *T. E. Ryan.*

MARSHALL, J. Under the most favorable view that can be taken of this case, respondent is not entitled to recover unless the foreman of the repair shops, Mr. Tait, who, it is claimed, applied the steam, was a superintendent within the meaning of ch. 438, Laws of 1889 (S. & B. Ann. Stats. sec. 1816*a*). As stated, in effect, by counsel for respondent in their printed argument, the action was brought on the theory that Tait was such a superintendent; that he was negligent; and that such negligence was the proximate cause of the injury which resulted in the death of the deceased. On that theory the cause was tried, submitted to the jury, a verdict rendered in plaintiff's favor, and judgment entered, from which this appeal was taken. It follows that, if the construction given to the act by the court below, upon which counsel relies, is wrong, then the judgment is wrong and must be reversed. The act is as follows:

"Every railroad corporation doing business in this state shall be liable for damages sustained by any employee thereof within this state, without. contributory negligence on his part, when such damage is caused by the negligence of any train dispatcher, telegraph operator, superintendent, yard

master, conductor or engineer, or of any other employee,. who has charge or control of any stationary signal, target. point, block or switch."

The question here presented is not what definition the railroad company now gives to the word "superintendent," or how Webster defines it; but in what sense did the legislature use the word in the act in question? To properly determine such question, resort must be had to the established rules for the judicial construction of statutes. It is said that: "The true rule is to look at the whole and every part of the statute, and the apparent intent derived from the whole, to the subject matter, to the effect and consequences,. to the reason and spirit of the law, and thus to ascertain the true meaning of the legislature, though the meaning so ascertained conflict with the literal sense of the words; the sole object being to discover and give effect to the intention of its framers." *Ogden v. Glidden*, 9 Wis. 46; *Harrington v. Smith*, 28 Wis. 43; *Ryegate v. Wardsboro*, 30 Vt. 746. Applying this test to the act in question, it clearly appears that the legislative intent was to provide a remedy for the negligence of officers and employees that have to do with the operating department of the road, the movement of trains and cars. Each of those specifically named fits persons that, as a matter of common knowledge, are responsible for the proper movement of trains and cars, "*train dispatcher, telegraph operator, superintendent, yard master,. conductor, or engineer.*" And following these designations. there is the general clause covering various other persons engaged in the same line of work, but who are not so well and commonly known by any specific name applied to their positions, "*or of any other employee, who has charge or control of any stationary signal, target point, block or switch.*" Now, if such was the intent of the framers of the law, and we think it was, then the word "superintendent" cannot be. made to apply to a foreman of the repair shop.

Again, it is laid down as an elementary principle in the construction of statutes that the common usage of words at the time of the enactment is a true criterion by which to determine their meaning. Smith, Stat. & Const. Law, § 482. The reason of this rule is that what was in the minds of the framers of the law at the time of its enactment, their thoughts, their specific intent, on the subject, must be sought out and given effect, in order to give to the law correct judicial interpretation. Applying the foregoing, there were, at the time of the enactment of the law in question, and had been for a long period of years theretofore, and have been subsequently, in railroad service everywhere in this country, as a matter of common knowledge, officers known as "superintendents" in the operating department of the road, general superintendents of the whole line, and superintendents of divisions. The general duties of such superintendents are intimately connected with the movement of trains and cars. Now, it must be presumed that the legislature used the word as it was commonly used. They had in mind the officers of railroads to whom the term was generally applied. The position of superintendent in the railway service is as definitely and well known as that of train dispatcher, telegraph operator, conductor, or engineer. It could not be sincerely claimed that the word "conductor" can be applied to the foreman of a section gang or of a bridge crew, because he merely conducts or manages the work; or that it can be applied to any other conductor than the one who manages the railroad train; and yet the act does not say "train conductor." It could not be sincerely claimed that the word "engineer" can be applied to the engineer who locates tracks and does engineering work of that kind, or who runs some little stationary pumping engine, or to any one of many other persons connected with railroad service that might properly be called "engineers;" and yet the act does not say "locomotive engineer." And the same illustration might be

given in respect to each of the persons specifically named in the act. It may thus be clearly seen that to apply the word "superintendent" to the mere foreman of a repair shop would be entirely inconsistent with the obvious purpose of the act.

Again, if it could be held that Mr. Tait was a superintendent at the time of the accident, he was certainly not engaged in his work as such at the time in question, but was merely assisting Hartford and his helper to turn the wheels of the engine. He was working in a common employment with Hartford and as his fellow-servant. *Stutz v. Armour*, 84 Wis. 623. The rule, in effect, is laid down thus: "Whether a person is to be considered a vice principal of another or a co-employee and fellow-servant of such other depends, not upon the rank or grade of such person, but upon the work then being performed by such person and such other." So, in this case, in order to establish the liability under the act of 1889, it is necessary, not only to show that the person whose negligence is complained of was a superintendent within the meaning of that act, but that he was engaged in his line of work as such at the time of the accident. Here, according to the undisputed evidence, it was not part of Mr. Tait's duties as a foreman of the shops to do or to have anything to do with the work he and the deceased were engaged in at the time of the injury. He merely took hold as a volunteer, to assist in doing the work. Hartford, the deceased, was really the one in charge, and they were, for the time being, in any view of the case, fellow-servants and nothing more. Though there is much conflict of authority on this subject in other jurisdictions, the rule here adopted has become thoroughly imbedded in the jurisprudence of this state; as see *Dwyer v. Am. Exp. Co.* 82 Wis. 307; *Peffer v. Cutler*, 83 Wis. 281; *Stutz v. Armour*, 84 Wis. 623; *Kliegel v. W. & V. Mfg. Co.* 84 Wis. 148. See, also, *Railway Co. v. Torry*, 58 Ark. 217; *Gulf, C. & S. F. R. Co. v. Schwabbe*, 1 Tex. Civ. App.

573; *Kansas City, M. & B. R. Co. v. Burton*, 97 Ala. 240; *Baltimore & O. R. Co. v. Baugh*, 149 U. S. 368.

From the foregoing it follows that the judgment must be reversed.

*By the Court.*— Judgment reversed, and cause remanded for a new trial.