REINKE v. NORTHERN PAC. RY. CO.

(Circuit Court, D. Montana. April 28, 1906.)

MASTER AND SERVANT—INJURIES TO SERVANT—RAILROADS—FELLOW SERVANTS—
STATUTES—CONSTRUCTION.

Act Mont. March 5, 1903 (Laws 1903, p. 156, c. 83) provides that every
railroad corporation within the state shall be liable for all damages sus-
tained by an employé thereof within the state, without contributory neg-
ligence on his part, when such damage is caused by the negligence of any
train dispatcher, telegraph operator, superintendent, engineer, or any
other employé who has superintendence of any stationary or hand signal.
*Held,* that the word "engineer," as used in such section, had reference
only to servants in charge of locomotives, and that the statute did not
cover an injury sustained by a servant of a railroad caused by the neg-
ligence of the operator of a stationary engine used to draw a plow along
the floor of flat cars for the unloading of gravel.

[Ed. Note.—Who are fellow servants, see notes to Northern Pac. R. Co.
v. Smith, 8 C. C. A. 668; Flippin v. Kimball, 31 C. C. A. 286.]

Duncan & Eby, for plaintiff.
Wallace & Donnelly, for defendant.

HUNT, District Judge. The plaintiff instituted this action to re-
cover $5,000 damages for an injury to his thumb. He alleges that he
was a laborer, hired by the Northern Pacific Railway Company; that
on August 30, 1904, one McCarthy was an employé of the defendant,
employed as an engineer operating a certain Ledgewood engine used
by the defendant in unloading dirt and gravel from its gravel cars
upon and along its tracks; that on August 30, 1904, plaintiff, as a
laborer, was performing his duties, assisting in the managing and
manipulating of a certain cable or wire rope, which was attached to
a certain drum, which was revolved by the machinery of the said
Ledgewood engine; that the gravel cars were being unloaded by draw-
ing a plow or float over and along the floor of the cars, which plow or
float was moved by the cable being attached to and passing from the
plow over and along the intervening cars, and to the drum, aforesaid;
that the drum was placed upon the car or truck upon which the Ledge-
wood engine was placed and being operated, at which point the cable
passed upon and over a spindle or roller, and then was fastened to
the said drum, where the cable was coiled around the drum; that,
in the unloading of the gravel and dirt from the gravel cars upon
and along the tracks, the cable became slackened, and doubled back
upon itself; that, in the discharge of his ordinary duties as a laborer,
which duties had been assigned to plaintiff by one Davis, an employé
and agent of defendant, and conductor of the gravel train, plaintiff
climbed the car or truck, upon which the Ledgewood engine was
placed, and took hold of the cable, as it was his duty to do, and
held it taut, while the said McCarthy, performing his duty, operated
the engine, which caused the drum to revolve; that, as plaintiff was
holding the cable taut, he was standing about six feet from the roll-
er, and facing the Ledgewood engine; that McCarthy, acting as em-
ployé and agent of the defendant, in a negligent and careless manner

started the Ledgewood engine at a high and unusual rate of speed, unknown to plaintiff, and contrary to the usual speed used in operating the said engine and drum, which sudden and violent and careless starting up of the engine caused the drum to revolve so rapidly that plaintiff was jerked from off his feet, and was violently pulled forward by the cable, which coiled so rapidly around the drum that the thumb on his left hand was drawn under and between the cable and the roller, thereby wounding the thumb in such a manner that it was necessary to amputate the same. The defendant has demurred to the complaint on the ground that the facts stated do not constitute a cause of action.

Plaintiff must recover, if recovery can be had at all, under the statute of Montana enacted March 5, 1903 (Laws 1903, p. 156, c. 83), which reads as follows:

"Every railway corporation, including electric railway corporations, doing business in this state shall be liable for all damages sustained by an employé thereof, within this state, without contributing negligence on his part, when such damage is caused by the negligence of any train dispatcher, telegraph operator, superintendent, master mechanic, yardmaster, conductor, engineer, motorman, or of any other employé who has superintendence of any stationary or hand signal."

A later fellow-servant statute, passed in 1905, pertaining to the liability of railroad corporations for damages to employés, is only useful to be consulted as aiding the court in reaching a correct construction of the act of 1903, which is admitted to be controlling in the case. Examination of the various fellow-servant statutes of the states shows that section 1 of the 1903 fellow-servant law of Montana was taken substantially from the statute of Wisconsin approved April 16, 1889, and in force in that state until 1893. The Wisconsin statute reads as follows:

"Every railroad corporation doing business in this state shall be liable for damages sustained by any employé thereof within this state, without contributory negligence on his part, when such damage is caused by the negligence of any train dispatcher, telegraph operator, superintendent, yardmaster, conductor, or engineer, or of any other employé, who has charge or control of any stationary signal, target point, block or switch."

The Legislature of Montana having obtained the statute from another state, the courts will, under well-known rules, have very great regard for, if, indeed, they will not be guided by, the construction put upon the law by the highest courts of the state whence the law was taken.

There could be no recovery by this plaintiff under the common law. That is conceded. So the case must rest upon the true construction of the statute which has changed the rule of the common law. I do not mean to narrow in any way the doctrine that the responsibility of a railroad company to its employés may be a matter of general law, but simply to recognize that, where there is an express statutory regulation changing the common law, the federal courts will adhere to the decisions of the courts of the state upon the subject. We will therefore be aided by the decision of the Supreme Court of Wisconsin

in Hartford v. Northern Pacific Railroad Company, 91 Wis. 374, 64 N. W. 1033. Liability was there sought to be fixed for the act of a foreman of repair shops, who, it was claimed, was a superintendent within the meaning of the statute quoted. The court thus reasoned:

"The question here presented is not what definition the railroad company now gives to the word 'superintendent,' or how Webster defines it; but in what sense did the Legislature use the word in the act in question? To properly determine such question, resort must be had to the established rules for the judicial construction of statutes. It is said that: 'The true rule is to look at the whole and every part of the statute, and the apparent intent derived from the whole of the subject-matter, to the effect and consequences, to the reason and spirit of the law, and thus to ascertain the true meaning of the Legislature, though the meaning so ascertained conflict with the literal sense of the words; the sole object being to discover and give effect to the intention of its framers.' Ogden v. Glidden, 9 Wis. 46; Harrington v. Smith, 28 Wis. 43; Ryegate v. Wardsboro, 30 Vt. 746. Applying this test to the act in question, it clearly appears that the legislative intent was to provide a remedy for the negligence of officers and employés that have to do with the operating department of the road, the movement of trains and cars. Each of those specifically named fits persons that, as a matter of common knowledge, are responsible for the proper movement of trains and cars, 'train dispatcher, telegraph operator, superintendent, yardmaster, conductor or engineer.' And following these designations there is the general clause covering various other persons engaged in the same line of work, but who are not so well and commonly known by any specific name applied to their positions, 'or of any other employé, who has charge or control of any stationary signal, target point, block or switch.' Now, if such was the intent of the framers of the law, and we think it was, then the word 'superintendent' cannot be made to apply to a foreman of the repair shop.

"Again, it is laid down as an elementary principle in the construction of statutes that the common usage of words at the time of the enactment is a true criterion by which to determine their meaning. Smith, Stat. & Const. Law, § 482. The reason of this rule is that what was in the minds of the framers of the law at the time of its enactment, their thoughts, their specific intent, on the subject, must be sought out and given effect, in order to give to the law correct judicial interpretation. Applying the foregoing, there were, at the time of the enactment of the law in question, and had been for a long period of years theretofore, and have been subsequently, in railroad service everywhere in this country, as a matter of common knowledge, officers known as 'superintendents' in the operating department of the road; general superintendents of the whole line, and superintendents of divisions. The general duties of such superintendents are intimately connected with the movement of trains and cars. Now, it must be presumed that the Legislature used the word as it was commonly used. They had in mind the officers of railroads to whom the term was generally applied. The position of superintendent in the railway service is as definitely and well known as that of train dispatcher, telegraph operator, conductor, or engineer. It could not be sincerely claimed that the word 'conductor' can be applied to the foreman of a section gang or a bridge crew, because he merely conducts or manages the work, or that it can be applied to any other conductor than the one who manages the railroad train, and yet the act does not say 'train conductor.' It could not be sincerely claimed that the word 'engineer' can be applied to the engineer who locates tracks and does engineering work of that kind, or who runs some little stationary pumping engine, or to any one of many other persons connected with railroad service that might properly be called 'engineers,' and yet the act does not say 'locomotive engineer.' And the same illustration might be given in respect to each of the persons specifically named in the act. It may thus be clearly seen that to apply the word 'superintendent' to the mere foreman of a repair shop would be entirely inconsistent with the obvious purpose of the act."

An examination of many cases cited from states other than Wisconsin shows that the courts considered their action as controlled by statutes which differ from that prevailing in Montana in 1903. Each case, too, must be distinguished upon its particular facts. So that, after all, we do not find analogies between the rules laid down in states where the statutes are dissimilar, as of very great help in reaching a proper conclusion as to the meaning of the Montana act of 1903.

The statute of Minnesota, for instance, is unlike that of Montana. It has been frequently passed upon by the Supreme Court of that state, and it is but a fair statement of the rule to say that it is there held that no recovery can be had, unless the injury is caused by the negligence of a co-employé in the actual moving of a train or in some manner directly connected therewith. Among the leading Minnesota cases are Johnson v. Railway Co., 45 N. W. 156, 8 L. R. A. 419, and Lavallee v. St. Paul, M. & M. Ry. Co., 41 N. W. 974. In the latter case the court put the decision upon the ground that the statute is intended to be confined in its operation to the cases of employés engaged in operating a railroad, and who are exposed to the hazards attending that business, and does not include all employés of a railroad company without regard to the kind of work in which they are engaged. This was also the view taken by the court in Pearson v. C., M. & St. P. Ry. Co. (Minn.) 49 N. W. 302. See, also, Weisel v. Railway Co. (Minn.) 82 N. W. 576. Swartz v. Great Northern Ry. Co., 101 N. W. 504, is one of the most recent discussions by the Minnesota court. The earlier cases are cited in that opinion and distinguished. Swartz, the plaintiff, was there held to be entitled to recover. He was a section hand, standing 18 feet back along the right of way, and was injured by the negligent acts of a locomotive fireman, who, in doing his duty, sorting coal, picking out the good from worthless pieces, threw out some slate and rock, while the train was moving, and in doing so carelessly hit Swartz. The reason of the decision was that sorting coal for the purpose of feeding a going engine was part of the operation of the railroad, and the injury of Swartz was due to the negligence of one engaged in such operation. In Jemming v. Great Northern Ry. Co., 104 N. W. 1079, decided in November, 1905, the Supreme Court of Minnesota again considered the purposes of the legislation, and the scope of its meaning; and again, by very clear statement, laid down the rule that the law only applies to those employés who are exposed to the peculiar hazards incident to the use and operation of railroads, and whose injuries are the result of such dangers.

The Iowa cases hold substantially as do the Minnesota decisions. The statute of Iowa is by no means as near to that which controlled in Montana as is the Wisconsin law cited. The case of Reddington v. Chicago, Milwaukee & St. P. Ry. Co., 75 N. W. 679, quotes the Iowa statute under which Reddington brought his action. It reads as follows:

"Every corporation operating a railway shall be liable for all damages sustained by any person, including employés of such corporation, in conse-

quence of the neglect of agents, or by any mismanagement of the engineers or other employés of the corporation, and in consequence of the willful wrongs, whether of commission or omission, of such agents, engineers, or other employés, when such wrongs are in any manner connected with the use and operation of any railway on or about which they shall be employed, and no contract which restricts such liability shall be legal or binding."

Reddington sued the defendant company for injuries caused by the neglect of a co-employé, while he and the plaintiff were engaged in coaling the engine that drew the train upon which Reddington was employed as a brakeman. The court directed a verdict for the defendant, upon the ground that it did not appear that plaintiff and any co-employé of his were having any railroad machinery moved on railroad tracks at the time of his injury, and that plaintiff was not exposed to the hazards or dangers incident to the use or operation of the railroad. It was the duty of the brakeman to assist a coal heaver in coaling the engine drawing the train on which the brakeman worked. At a certain station, the coal was put into large iron buckets and placed in position on an elevated platform by means of a derrick with a windlass, preparatory to the coming of engines for coal. At the particular station, in coaling an engine, the coal heaver stood on the ground at the foot of the derrick and worked the windlass, so as to raise and lower the buckets, and assist in swinging them to and from the engine by turning the derrick. The duty of the brakeman was to go upon the elevated platform and give signals to the man at the windlass, and to hook the derrick chain to the full bucket, give the signal to hoist, and to help in swinging the bucket around over the tender, to open the spring at the bottom of the bucket, to replace the bottom, and to help swing it about on the platform. The brakeman had hold of an empty bucket, and was walking backward with his head under the bucket, pulling it toward him for the purpose of swinging it into place. Without any signal from him, the bucket was lowered, struck him, and knocked him off the platform and injured him. When the accident occurred, the engine and train was standing still; the engineer being on the ground. The Supreme Court of Iowa held that the court erred in sustaining the defendant's motion for a verdict, inasmuch as the work in which plaintiff and the coal heaver were engaged was directly connected with the movement of the engine, and the hazards were therefore peculiar to the use and operation of the railroad. A rehearing was granted in the case; the second opinion being written by the same judge who wrote the first. The court reversed its former conclusion, and concluded that the injury plaintiff received was not in any manner connected with the use and operation of the railroad.

In C., M. & St. P. Railway v. Artery, 137 U. S. 507, 11 Sup. Ct. 129, 34 L. Ed. 747, the Supreme Court of the United States reviewed a number of the Iowa cases and decided that, under the statute of Iowa, an employé doing duty under direction of a foreman on a moving hand car was engaged in work directly connected with the use and operation of the railway, and could recover for an injury caused by the negligence of such foreman.

The plaintiff cites Callahan v. St. Louis Merchants' Bridge Terminal Ry. Co. (Mo. Sup.) 71 S. W. 208, 60 L. R. A. 249, 94 Am. St. Rep. 716, where the statute of Missouri was discussed by the Supreme Court of that state. The court draws particular attention to the fact that the Iowa act is almost the antithesis of the Missouri law. The statute of Missouri makes a railroad company liable for all damages sustained by any agent or servant thereof, while engaged in the work of operating such railroad, by reason of the negligence of any other agent or servant thereof. A liberal construction was placed upon the statute; but, as the court rests its judgment upon the comprehensive language of the particular statute of the state which is essentially different from the statute of Montana, under which the plaintiff in this action sues, it is unnecessary to examine the case at great length.

My judgment is that, considering the real underlying object of the legislation, that reasoning is the more forcible which construes the law as one which extends protection to those who are injured by the negligence of those persons in the employments named in the statute, and to those only. Or it may be stated this way: The purpose of the legislation was to make a railway company answerable for the negligence of certain employés whose duties are well defined as engaged in and about the work of operating railway trains. It needs no argument to demonstrate that carelessness upon the part of an engineer in charge of a locomotive, or upon the part of a train dispatcher, or of a conductor, may mean fearful peril to human life. So, too, negligence by a yardmaster may endanger those in and about the yards under his charge, or the carelessness of a master mechanic or superintendent might also imperil life and personal safety. This being correct, what was meant by the word "engineer"? Looking at the other words of the statute, the following classes of employés are specified: train dispatchers, telegraph operators, superintendents, master mechanics, yardmasters, conductors, engineers. employés having superintendence of stationary or hand signals. As indicated, all of the employés named for whose negligence a railroad company is made liable are operatives directly connectd with the movement of trains. None other are mentioned, and, unless others are fairly within the meaning of the words used, the courts have no right to extend the statute so as to include them.

Applying these rules of interpretation, I regard the word "engineer" as used in the Montana statute of 1903, under which plaintiff sues, as referring to a locomotive engineer who moves a locomotive used in moving railroad trains. Civil engineers are not those meant to be included; nor are engineers who have to do with engines not connected with the movement of cars or trains upon the tracks; for the perils peculiar to the operation of a train are not directly connected with the employments of such other engineers. Plaintiff assumed the risk incidental to the operation of any stationary engine. Neither the engineer, nor the operatives connected with the movement of the train, had part in the injury done him. The case is but one where the accident might have happened if the stationary engine had been operated by persons not employed by the defendant company, in unloading

gravel from any platform, and the fact that the engine was owned and operated by a railroad company does not of itself authorize the court to change the general rules which control in such instances. This interpretation of the statute of 1903 finds implied approval in the fact that the Legislature of 1905 changed the law by making a railroad company liable for all damages sustained by any employé of such company, "in consequence of the neglect of any other employé or employés thereof, in consequence of the willful wrongs, whether of commission or omission, of any other employé or employés thereof, when such negligence, mismanagement or wrongs, are in any manner connected with the use or operation of any railway or railroad on or about which they shall be employed, and no contract which restricts such liability shall be legal or binding." I think it reasonably clear that the Legislature in passing the act of 1905 had in mind doing away with limitations which circumscribed liability under the act of 1903, and by the later act has imposed liability where it had not existed under the act of 1903.

As bearing upon the significance of the word "engineer" used in the statute of Montana, which controls in this action, the following cases are interesting: In Devere v. Delaware, L. & W. R. Co. (C. C.) 60 Fed. 886, a motion to quash a summons for irregular service was overruled by Judge Green, who held that a statute of the state of New Jersey, authorizing service upon any officer, director, agent, clerk, or engineer of a corporation, permitted service upon an engine driver. The word "engineer," as used in the act, was given its usual and commonplace meaning, which was held to include employés of defendant who were locomotive engineers. In Whitehouse v. Grand Trunk Ry. Co., Fed. Cas. No. 17,565, the United States Circuit Court for the District of Maine had occasion to consider what was meant by the word "engineer," as used in the rules of the railroad company, which provided that no person should be allowed to ride on the engine without the permission of the engineer. It was there argued that the engineer upon whom the authority was given to grant permission was the civil engineer. The court held, however, that the engineers meant were those whose duties brought them in communication with the locomotives or their movements up and down the line. "Throughout the United States," said the court, "this word 'engineer,' when used in connection with railroads, is invariably employed to designate the party in charge of the locomotive. In scores of opinions in the reports of the decisions of the courts of the various states, this word is so employed, and by Worcester and Webster an 'engineer' is defined as 'one who manages an engine'; an 'engine man'; an 'engineer.'"

Upon the facts pleaded, I am of opinion that the case, as presented by the complaint, is not one where plaintiff can claim that his injury was inflicted by the negligence of the engineer, as included within the terms of the statute under which he seeks recovery.

The demurrer is therefore sustained.