SHARPE, Appellant, vs. HASEY and others, Respondents.

*February 1—February 18, 1908.*

*Statutes: Construction: Words and phrases: "Trade or manufacture:" "Place of trade:" "Place of manufacture:" Highways: Establishment: Restrictions.*

1. The common, ordinary, or approved meaning of words in a legislative enactment is to be regarded as the one intended by the law-givers, unless such meaning is inconsistent with the manifest legislative purpose, but technical words and phrases and such others as may have acquired a peculiar and appropriate meaning in the law are to be construed and understood according to such peculiar and appropriate meaning.

2. The words "trade and manufacture" are not technical words, and, when used to define a building or fixture, do not apply to a farm building used to house and cure or make ready for market any agricultural product.

3. A place of trade is a place devoted to the business of buying and selling or of plying some mechanical vocation.

4. A place of manufacture is, generally speaking, one where articles of trade are created out of raw material in its simple or some improved form.

5. A farm building commonly called a tobacco shed, used by a farmer to dry, cure, and fit for market tobacco grown on a farm, is not a "building or fixture used for the purpose of trade or manufacture" within the calls of sec. 1263, Stats. (Supp. 1906; Laws of 1899, ch. 140), forbidding the laying out of a public highway through any such building or fixture.

APPEAL from a judgment of the circuit court for Columbia county: CHESTER A. FOWLER, Circuit Judge. *Reversed.*

Action to enjoin the defendants, as the supervisors and pathmaster of the town of Hampden, from opening a highway through appellant's farm.

The issues raised by the pleadings and tried are indicated by the result, as shown by the court's findings, which are, in effect, as follows: At all times material to the litigation plaintiff owned the premises described in the complaint, and the defendant supervisors of the town of Hampden, in which the land was located, duly laid out a highway through the premises as alleged. The same is a legal public highway and defendants, acting in their official capacities, intend to open the same. Damages were duly awarded in the sum of $722. The resident population of the town is less than 8,000 persons according to the last census, and by the last assessment the value of the taxable property therein is $1,531,825. The highway was laid out through a tobacco shed belonging to the plaintiff, situated on his land. It is used by him to dry, cure, and fit for market tobacco grown on such farm. The shed is a building or fixture used for the purpose of trade or manufacture. The damage thereto by laying out and establishing the highway through the same is $30. The value of the structure is $80. The highway was not accepted nor the award of damages approved by a majority of the qualified electors of the town. Payment of the damages awarded was provided for by the electors. No award of damages was made on account of the tobacco shed exclusive of the damages to the land, the award being made in a lump sum of $600. Upon such facts the court decided that no approval of the award of damages by the electors of the town was necessary to render the laying out of the highway valid, and that defendants were entitled to judgment dismissing the complaint with costs.

Judgment was rendered accordingly.

For the appellant there was a brief by *Richmond, Jackman & Swansen,* and oral argument by *S. T. Swansen.*

For the respondents there was a brief by *W. C. Leitsch* and *E. E. Brossard,* and oral argument by *Mr. Brossard.*

MARSHALL, J.   The case, primarily, turns on whether a farm building commonly called a tobacco shed is a building for trade or manufacture within the meaning of sec. 1263, Stats. (Supp. 1906; Laws of 1899, ch. 140), which provides that:

"No public highway shall be laid out through or upon any orchard or garden or any building or fixture used for the purpose of trade or manufacture, when the damage caused thereby to such orchard, garden, building or fixture, exclusive of the damage to the land, shall exceed seventy-five dollars; . . . or through or upon any other building or fixture where the value of said building or fixture exceeds seventy-five dollars; or through or upon the yard or inclosure necessary to the use or enjoyment thereof, without the consent of the owner. . . ."

If it shall be determined that the structure in question, within the meaning of the quoted language, was not a building used for trade or manufacture, then the judgment complained of must be reversed and it will not be necessary to consider any other question discussed by counsel.

The rule for construction, if construction be necessary in this case, is elementary and is a part of the written law as well.   The common, ordinary, or approved meaning of words in a legislative enactment is to be regarded as the one intended by the law-givers, unless such meaning is inconsistent with the manifest legislative purpose, "but technical words and phrases and such others as may have acquired a peculiar and appropriate meaning in the law shall be construed and understood according to such peculiar and appropriate meaning."   Sec. 4971, Stats. (1898).

The words "trade or manufacture" are not technical

words, so the proviso above mentioned does not affect the case. Such words have common, ordinary meanings which by common knowledge occur to the mind of any one of ordinary intelligence upon their being used. Such meanings are entirely apart from the broad or general or the narrow and particular ones, which, if necessary, might be attributed thereto. There is no reason which we can perceive why such common, ordinary meanings should not prevail in the situation in hand. Certainly it is not obvious from the law that the legislature intended otherwise. If any different meaning were in the legislative mind, it is too much involved in obscurity to warrant making search therefor, since, as seen, under the statutory rule we should not go that far. We are not to depart from the plain, ordinary sense unless it is manifest that such was the legislative purpose.

Now it does not seem best, in treating such a simple proposition as the one before us, to discuss it at any great length and endeavor to determine with strict accuracy just what the ordinary meanings of the words in question include. It is sufficient for this case that in the opinion of the court they do not apply to a farm building used to house and cure or make ready for market any agricultural product. The farmer must have his granary in which his crop of grain may be stored, cleaned, and graded so as to be suitable for market. He may also have his storehouse for potatoes, where they are sometimes separated into grades to improve their marketable qualities. He may have his milkhouse where cream is separated from the milk for delivery of the former to a manufacturing establishment. He may also have his stock barns where cattle and other domestic animals are cared for when necessary or proper in order to grow and prepare them for market. No one, we apprehend, would think of calling such a structure one for trade or manufacture. A tobacco shed, where tobacco is cured and made marketable as a farm product, is in the same class. The tobacco is not

a completed farm product until it is cured and put in condition for sale. We think it is clear that any farm building used for the mere purpose of housing and making ready for market, as raw material in its simplest form, the products grown on the farm is not a building for trade or manufacture, commonly speaking.

A place of trade is a place devoted to the business of buying and selling or of plying some mechanical vocation. *Queen Ins. Co. v. State,* 86 Tex. 250, 263, 24 S. W. 397; *U. S. v. Patterson,* 55 Fed. 605, 639.

A place of manufacture is, generally speaking, one where articles of trade are created out of raw material in its simple or some improved form. *Evening Journal Asso. v. State Board,* 47 N. J. Law, 36. In that case there is quite a full discussion of the scope of the term under consideration. The court said:

"The cardinal rule in the construction of legislative acts is that words in common use are to be taken in their ordinary signification."

And further said, referring with approval to the decision in *Parker v. Great W. R. Co.* 6 E. & B. 77:

"The term 'manufactured articles' must be understood in its popular sense; that it [does] not mean all articles produced from the raw state by manual skill and labor, but those articles only which are made in what are, in popular language, called manufactories. To call a farmer who cultivates his land and reaps and markets his crop a manufacturer—as he is in the scientific signification of the term—would do violence to language in the construction of a statute. . . ."

That is equivalent to saying this: to speak of a farm building devoted to the use of storing some farm products and putting the same in proper form for market, as a building for the purpose of manufacture, would violate the common understanding of mankind. That seems to be sound doctrine. It meets with our approval.

Nothing can be gained by prolonging the discussion. The difficulty in the case so far has grown out of departure from the common, ordinary meaning of words and going in search of the boundaries to which the meaning thereof may be reasonably extended for the purpose of solving manifest ambiguity, where none existed in fact. The decision that a farmer's tobacco shed is a place of trade or manufacture cannot be approved.

*By the Court.*—The judgment is reversed, and the cause remanded with instructions to enter judgment according to the prayer of the complaint.