State ex rel. Cantwell Printing Company, Respondent, vs. Hull, Secretary of State, Appellant.

*October 10—November 4, 1919.*

*States: "Embossing" as used in statute regulating state printing: Construction of word governed by general usage: Authority of state printer to do embossing under printing contract: Mandamus: Sufficiency of proof of funds to compel issuance of warrant for payment of claim.*

1. In view of sec. 4971, Stats. 1917, providing that in the construction of the statutes "all words and phrases shall be construed and understood according to the common and approved usage of the language," the word "embossing" as used in ch. 657, Laws of 1911, as amended by sec. 35.43, Stats. 1917, pre-

scribing a scale of maximum prices for state printing, includes the stamping of .titles, names, figures, and designs on the covers of books printed and bound by a contractor for such printing.

2. Such contractor is not concluded by the opinion of the attorney general that "embossing" as used in the statute did not include the work done by him, although he agreed in the contract to be guided by the attorney general's interpretation of the statutes, the determination of the meaning of "embossing" requiring a resort to evidence as to the common usage of the word.

3. The contractor can recover for embossing titles and designs on the covers of books under the contract on account of orders given him by the printing board requiring to be done the work which he did do, though the word "embossing" was not used, and though sec. 35.39, Stats. 1917, provides that no state printer shall be paid for printing not authorized by written order of the printing board or chief clerk of the legislature.

4. On *mandamus* to compel the audit of a claim of the contractor and the drawing of a proper warrant for its payment, under the particular facts a stipulation that there were at all times sufficient funds to the credit of the printing board to cover the cost of printing ordered is sufficient to show that there were funds also in the treasury to the credit of the various departments of the state government to which the printing was chargeable, in view of the presumption that state officers and agents obeyed the law and did not subject themselves to the penalty of sec. 20.75, Stats. 1917.

Appeal from a judgment of the circuit court for Dane county: E. Ray Stevens, Circuit Judge. *Affirmed.*

*Mandamus.* The relator had a contract with the state during the years 1915-1916 to do all the printing of class 1, legislative printing, and class 3, governor's messages, officers' reports, pamphlets, magazines, bulletins, and acts of officers and societies. The contract was let under the provisions of ch. 657, Laws 1911, as amended. Sec. 20.43 of said chapter, now sec. 35.43, Stats. 1917, prescribes a scale of "maximum prices." The entire section was embodied in a proposal and in a contract between the relator and the state. The prices are specified in great detail under ten heads, among which are: Presswork; Binding, machine thread sewed books, including stock per volume; Binding

blank books, etc.; and Miscellaneous.    Under the heading "Miscellaneous" appears the following: "Embossing, per volume . . . . . . . . . . . .    .08."    It appears that a part of the work the relator was required to do was to impress or stamp certain titles, names, figures, and designs upon the covers of books printed and bound by it.    For doing this work the relator charged eight cents per volume, claiming that it was *embossing*.    The secretary of state refused to audit the claim of the relator, and this action was brought to compel the secretary of state to audit the claim of relator and to draw the proper warrant for the payment thereof.    Relator had judgment in the circuit court, from which the defendant appeals.

For the appellant there was a brief by the *Attorney General* and *J. T. Dithmar,* assistant attorney general, and oral argument by *Mr. Dithmar.*

For the respondent there was a brief by *Gilbert & Ela* of Madison, and oral argument by *F. L. Gilbert.*

ROSENBERRY, J.    1. The main question presented by the record on this appeal is, Did the word *embossing* as used in the statute and contract cover the work done by the relator in impressing or stamping upon the covers of books printed and bound by it, names, titles, etc.?    No raised or relief work was done.    The impressing or stamping was a depression in the surface of the cover of the book.    The contention of the defendant is that the work done was stamping and not embossing, and was therefore covered by the specifications in sec. 20.43, Stats. 1911, as a job of *bookbinding* would be incomplete without the name or title being placed upon the cover.    The relator claims that the work is embossing within the meaning of that term as it is used in the contract and statute.

The statute uses the word *embossing,* but does not attempt to define it.    It is conceded that no other specification in terms covers the work done by the relator.    No other item

in the statute covers stamping or impressing letters, titles, designs, etc., upon the covers of books. All the necessary work is covered by the statute in great detail. At the time the legislature enacted sec. 20.43 it enacted sec. 20.44, which attempted to interpret the provisions of sec. 20.43. Sub. (4) of that section provides that "Folding, stitching, and binding include collating, drying and pressing." As the trial court says, "Had it been the intent of the legislature that binding should include the placing of the title, name, etc., upon the cover, it would have so provided. Instead of doing so it fixed a separate price for embossing, which under the usage of the craft must be held to cover the work of placing the title upon the book." No claim is made that the word *embossing* has acquired any meaning in the law. Sec. 4971, Stats. 1917, provides that in the construction of the statutes of this state "All words and phrases shall be construed and understood according to the common and approved usage of the language." The question is not, How do the lexicographers define the word *embossing?* *Hartford v. N. P. R. Co.* 91 Wis. 374, 64 N. W. 1033. The term *embossing* being one employed in the printing and bookbinding art, resort must be had to those learned in that art for its common and approved usage therein. *Peterson v. Widule,* 157 Wis. 641, 147 N. W. 966; 36 Cyc. 1118. It appears almost without dispute that the word is commonly used in the bookbinding trade to designate precisely the class of work done by the relator for which it has charged eight cents per volume as embossing. While some of the witnesses testified that the word so used is not used with strict technical accuracy, they practically agreed that it is commonly so used. There is nothing in the statute upon which an inference can be based that the legislature intended to use the word in any other than its common and ordinarily accepted meaning. The statute contemplates that printers and bookbinders would use the scale of maximum prices as a basis for bidding, and the legislature must have contemplated that the

word *embossing* would be understood by printers and book-binders to have the meaning which common and approved usage in the craft has established. *Sharpe v. Hasey,* 134 Wis. 618, 114 N. W. 1118; *State ex rel. McManus v. Trustees,* 138 Wis. 133, 119 N. W. 806. The finding of the trial court that the placing of titles on volumes which the relator printed and bound, pursuant to the contract to do the specified classes of state printing during the years specified, was embossing within the meaning of that term as used in sec. 20.43, Stats. 1911, and in the contract, is amply sustained by the evidence.

2. The contract contained the following clause, also contained in the statute: "And the said party of the second part [relator] further covenants and agrees to be guided by the attorney general's interpretation of chapter 20 of the Statutes." It is claimed that under the rule of *Keachie v. Stark-weather D. Dist.* 168 Wis. 298, 170 N. W. 236, relator is concluded by the opinion of the attorney general that embossing did not include the work done by the relator. Without attempting to interpret fully the meaning of that·clause, it is clear that the agreement to be guided by the opinion of the attorney general does not constitute the attorney general a trier of fact. The question as to whether or not the work done by relator is embossing, under the circumstances shown in this case, is a question of fact. The meaning of the statute cannot be arrived at solely by the application of rules of construction or interpretation. Resort must be had to evidence. The question is, What is the meaning of the term *embossing* according to the common and approved usage of the language? Being a technical term employed in the arts, proof must be offered in order to establish it. In one sense the statute needs no interpretation; it covers embossing, which it does not attempt to define. The question then arises, How is the word commonly used and understood by those who employ it? Its meaning must be deduced from

the evidence, and the deduction is a conclusion of fact. The clause, therefore, had no application under the facts in this case.

3. Sec. 20.39, Stats. 1913, contains the following clause: "No state printer shall be paid for any printing not authorized by a written order of the printing board or of a chief clerk of the legislature." The orders given to relator by the printing board required the exact work to be done which was done by the relator. The fact that the word *embossing* was not used is immaterial. A thing does not lose its identity because it bears no label. Embossing is embossing whether so designated by the order or not.

4. It is claimed that the relator cannot recover because there was no proof offered that funds were in the state treasury to the credit of the various departments of the state government to which the printing was chargeable, as well as to the credit of the printing board, out of which the relator's claim could be paid. It was stipulated by the parties that there were at all times sufficient funds to the credit of the printing board. The proof went no further. We think that sufficient under the facts in this case. Sec. 20.75, Stats. 1917, provides: "It shall be unlawful for any state officer, department, board, commission, committee, institution or other body, or any officer or employee thereof, to contract or create, either directly or indirectly, any debt or liability against the state or for or on account of any state officer, department, board, commission, committee, institution or other body, for any purpose whatever, without authority of law therefor, or prior to an appropriation of money by the state to pay the same," and provides that violation of the act shall be punished by fine or imprisonment. The cost of the work ordered by the printing board being payable in the first instance out of the revolving fund, in the absence of proof we must presume under the facts and circumstances shown here that the officers and agents of the state have obeyed the law

and have not subjected themselves' to the penalty of sec. 20.75.

*By the Court.*—Judgment affirmed.

OWEN, J., took no part.