ELLISON and others, Appellants, vs. STRAW and others, Respondents.

*November 29, 1902—January 13, 1903.*

*Life insurance: Debtor and creditor: Policy for benefit of married woman: Interest of beneficiary: Exemptions: Statutes: Policy on husband's life: Vested and contingent interests: Children: Married women: Separate estate: Disability of married woman to assign rights as beneficiary under policy on life of another.*

1. By sec. 2347, Stats. 1898, insurance on the life of any person for the benefit of a married woman cannot be reached by her creditors or those of any other person.

2. Ch. 376, Laws of 1891, now a part of sec. 2347, Stats. 1898, as regards married women, and, contingently, their children, changes the rule that a mere beneficiary in a policy of life insurance has no interest therein during the life of the assured which he cannot take away by naming some other person as beneficiary or disposing of the policy fund by will. *Strike v. Wis. O. F. Mut. L. Ins. Co.,* 95 Wis. 583, 70 N. W. 819, so far as to the contrary, is overruled.

3. A policy of life insurance upon the life of any person payable to a married woman, with no provision therein as to a beneficiary in case she shall not survive to take, belongs to her children if she has any surviving her, with the same freedom from interference by creditors or others as in case of the first beneficiary.

4. By sec. 2347, Stats. 1898, as it now stands:

(a) A married woman may, without her husband's consent, take out a policy of insurance on his life for her own benefit, or for such benefit and that of her children.

(b) A policy of insurance taken out upon any life for the

benefit of a married woman, nothing being said as to who shall be the beneficiary in case she shall not survive to take at the maturity of the policy, vests a contingent right in the insurance fund in her, which is her sole and separate property, free from control or disposition by her husband or the person taking out the insurance, and beyond the reach of the creditors of any one.

(c) Such a policy vests in the children of the married woman a contingent right to the insurance, safe from disturbance by her or any other person, or by such children, prior to the maturity of the policy and the fund reaching their hands.

(d) The right in the children does not contemplate a joint enjoyment of the insurance fund by them and their mother. It is a mere right to the fund in case the mother does not survive to receive the same, there being no other disposition thereof provided for in the policy.

(e) A policy of insurance of the character mentioned, with the added element providing for a disposition of the insurance fund upon the contingency of the wife not surviving to receive the same, vests in the wife the same right in all respects as if such secondary disposition were not made.

(f) A married woman is under an absolute disability to part with her beneficiary interest by assignment. Her husband or person paying the premium is under a like disability to disturb her rights by assigning the policy or changing the beneficiary therein, or disposing of the policy by will, and creditors generally are as completely debarred from resorting to the policy for the payment of their claims.

(g) The policy and its proceeds are free from all interferences save lapses and forfeitures mentioned, militating against the proceeds thereof, upon the time arriving and circumstances occurring named as conditions precedent to the maturity of the contract in her favor, vesting in her with the right to personal possession of the fund as her separate property, leaving the same then subject to her obligations the same as any other portion of her estate.

[Syllabus by Marshall, J.]

Appeal from a judgment of the superior court of Milwaukee county: J. C. Ludwig, Judge. *Affirmed.*

Creditors' action to reach two insurance policies owned by defendants *Alonzo W. Straw* and *Amelia E. Straw*. The findings of fact sufficiently show the issues made by the pleadings. Here is a brief statement thereof:

Plaintiffs are and were, during all the time material to this case, copartners doing business as John B. Ellison & Sons. The defendant *Northwestern Mutual Life Insurance Company* is a duly organized Wisconsin life insurance corporation. Defendant *Amelia E. Straw* is the wife of defendant *Alonzo W. Straw. Carrie A. McCoy* is the daughter and only child of *Alonzo W. Straw* and wife, and *William A. McCoy* is her husband. December 19, 1900, plaintiffs recovered and caused to be duly docketed in the superior court of Milwaukee county, Wisconsin, a judgment against defendants *Straw* for $11,951.55. Before the commencement of this action execution was duly issued for the enforcement of such judgment, and was returned in due form wholly unsatisfied. Thereafter, and before the commencement of this action, in proceedings against the defendant insurance company as garnishee of the *Straws,* plaintiffs recovered, to be applied on such judgment, $3,802.47. The amount unpaid on the judgment is $8,663.24. The *Straws* do not own any property in this state subject to execution. August 7, 1877, defendant insurance company issued to defendant *Alonzo W. Straw* its policy of insurance No. 93,659, agreeing, in consideration of $102.52 then paid, and payment of a like sum August 7th each year thereafter during the assured's life, to insure him for the benefit of his wife for $6,000 for two years, and $4,000 thereafter, payment to be made to her after his death, within sixty days of due notice and proof thereof, or to her executors, administrators or assigns in case she survived her husband, otherwise to his administrators or assigns. The policy contained a provision to the effect that, in case of default in any annual premium after the payment of three premiums, there would be issued to the assured a paid-up, nonparticipating policy for an equitable sum equal to the full amount of payments made in excess of the first two premiums, conditioned upon the policy being then free

from any claims by the company or indebtedness of the assured to it, and upon a written application being made therefor and the policy and all claims under it being surrendered to the company within six months after the default. September 19, 1885, said company issued to Alonzo W. Straw its policy of life insurance No. 137,000 for the benefit of his wife, conditioned upon her surviving him, otherwise for the benefit of his administrators or assigns. On account of and in lieu of the first policy Alonzo W. Straw holds a full-paid, nonparticipating life policy for $2,153, and one in lieu of the second policy mentioned of $6,660. No obligation rests upon defendant insurance company to pay any sum upon either of said policies during the life of the assured, but in accordance with the uniform custom of the corporation, it will pay as a surrender value for the first policy, $1,145.96, and for the second policy $3,530.30. Such surrender value, as to each policy, will increase as the expectancy of life of the assured decreases. The policies are now held by the assured free from any assignment or incumbrance or claim, otherwise than in this action.

Upon such facts the court decided as a matter of law that the policies of insurance could not be subjected to the payment of plaintiffs' judgment, and ordered the complaint dismissed with costs. Judgment was entered accordingly.

*William Kaumheimer,* for the appellants.

For the respondents there was a brief by *Turner, Pease & Turner,* and oral argument by *W. J. Turner.*

Marshall, J. This appeal turns on the construction of sec. 2347, Stats. 1898. As it is necessary to view the statute as a whole in order to reach a correct conclusion, especially leaving out of view authorities elsewhere, we will embody the same as an entirety in this opinion:

"Any married woman may, in her own name or in the name of a third person as her trustee, with his assent, cause to be insured for her sole use the life of her husband, son or

other person for any definite period or for the natural life of such person; and any person, whether her husband or not, effecting any insurance on his own life or on the life of another may cause the same to be made payable or assign the policy to a married woman or to any person in trust for her or her benefit; and every such policy, when expressed to be for the benefit of or assigned or made payable to any married woman or any such trustee, shall be the sole and separate property of such married woman and shall inure to her separate use and benefit and that of her children, and in case of her surviving the period or term of such policy the amount of the insurance shall be payable to her or her trustee for her own use and benefit, free from the control, disposition or claims of her husband and of the person effecting or assigning such insurance and from the claims of their respective representatives and creditors. But if the annual premium on any such policy shall exceed the sum of one hundred and fifty dollars and is paid by any person with intent to defraud his creditors an amount equal to the premiums so paid in excess of said sum, with interest thereon, shall inure to the benefit of such creditors, subject, however, to the statute of limitations. The amount of any such insurance may be made payable, in case of the death of such married woman before the period at which it becomes due, to her children or to their guardian for their use, if under age, or to any other person as shall be provided in the policy. In such case the receipt of such married woman or of such children, or of their guardian if minors, shall discharge the insurance corporation from all further liability therefor. The provisions of this section shall apply to all insurance on lives effected before the passage of these statutes."

Does that language disclose a legislative purpose to guard the insurance upon the life of a person, designed, in the manner indicated in the statute, for a married woman, absolutely against the claims of her creditors as well as his, and to so entrench the same, that, if kept alive till the policy matures, in the contingency that she then survive, the insurance fund will reach her hands without interference from anybody? That is the broad question involved, though of course here only that particular branch thereof is required to be decided

relating to the right of a married woman's creditors to appropriate her insurance before the maturity of the policy against her will. Its solution in the affirmative will sustain the judgment.

That the language of the statute is not so entirely free from ambiguity as not to admit of judicial construction, we think is apparent without argument. So we will pass the preliminary question in that regard and examine it in the light of those familiar tests to be applied to written laws for the purpose of judicially discovering the idea attempted to be voiced therein by the lawmaking power,—those principles which require us to "look at the whole and every part of the statute, and the apparent intent derived from the whole, to the subject-matter, to the effect and consequences, to the reason and spirit of the law, and thus to ascertain the true meaning of the legislature, though the meaning so ascertained conflict with the literal sense of the words; the sole object being to discover and give effect to the intention of its framers." *Ogden v. Glidden,* 9 Wis. 46; *Harrington v. Smith,* 28 Wis. 43; *Hartford v. N. P. R. Co.* 91 Wis. 374, 64 N. W. 1033. Bearing in mind that judicial authority to declare the law by rules of construction is limited by this principle, the legislative purpose, however obvious, cannot, by mere judicial construction, be regarded as efficiently carried into the statute unless it can be read out of the language thereof without looking beyond its reasonable scope. But, as said in *Salmon v. Duncombe,* 11 L. R. App. Cas. 627, the intention of the legislature being clear, nothing short of "absolute intractability of the language used" to express it will prevent its being carried out by the courts.

It is significant that the reviser's notes which were before the legislature of 1878, when sec. 2347 was originally adopted, show that the particular wording thereof was adopted for the purpose of rendering life insurance, to a specified amount, "exempt from debts"; not from the debts

of any particular person, it will be noted, but generally, "from debts." The words, "be the sole and separate property of such married woman," and "free from the control or disposition of her husband," etc., were added to the statute by ch. 376, Laws of 1891. Prior thereto, notwithstanding studied efforts of lawmakers, by statutory restrictions, to guard life insurance made payable to a married woman, so that she would enjoy the same in case of her surviving till the maturity of the policy, to take according to the terms of the contract, the door was left wide open, under the judicial policy of this state, for the person taking out the policy and paying the premiums, she being a mere beneficiary, to destroy her rights in that regard at any time at his pleasure, by designating some other beneficiary to take in her place, or by disposing of the insurance by will. *Clark v. Durand,* 12 Wis. 223; *Kerman v. Howard,* 23 Wis. 108; *Foster v. Gile,* 50 Wis. 608, 7 N. W. 555, 8 N. W. 217. The statement found in *Strike v. Wisconsin O. F. M. L. Ins. Co.* 95 Wis. 583, 589, 70 N. W. 819, and unguardedly referred to subsequently in *Alvord v. Luckenbach,* 106 Wis. 537, 82 N. W. 535; *Stoll v. Mut. B. L. Ins. Co.* 115 Wis. 558, 92 N. W. 277, and perhaps other cases, that the amendment to sec. 2347, of 1891, "was not intended to change the rule of *Foster v. Gile,*" as regards the power of the owner of a life insurance policy to change the beneficiary therein named without such beneficiary's consent, is clearly wrong respecting married women and their children, where there is no person named as beneficiary to take in case the mother does not survive to do so. To the extent suggested, a purpose is clearly manifested by the amendment of 1891 to change the judicial rule which existed from an early day up to 1891, that the mere beneficiary named in a policy of insurance had no rights whatever which the assured was bound to respect, and it was overlooked in *Strike v. Insurance Co.,* and not sufficiently brought to our attention to lead to the necessary cor-

rection till *Rawson v. Milwaukee M. L. Ins. Co.* 115 Wis. 641, 92 N. W. 378. It must be understood now that the legislation of 1891, as regards the section of the statute under discussion, worked a radical change in the previous rule, as to the control, by assured persons, of policies upon their lives in favor of married women, or contingently for the benefit of the children of such women. When a policy of insurance upon the life of a person is expressly made payable to a married woman or for her benefit, with no provision as to where the insurance fund shall go in the event of her not surviving to take at the maturity of the policy, by force of the statute it goes to her children with the same freedom from interference by creditors or acts of the assured person as in case of the first beneficiary.

The statute, it will be seen, leaves the assured free to make any person he may see fit his beneficiary, after the married woman named as primary beneficiary, by a stipulation in the policy, in these words:

"The amount of any such insurance may be made payable, in case of the death of such married woman before the period at which it becomes due, to her children or to their guardian for their use, if under age, or to any other person as shall be provided in the policy."

These purposes, we take it, are clearly found in the statute: (1) A married woman may, without her husband's consent, take out a policy of insurance on his life for her own benefit or for such benefit and that of her children. (2) A policy of insurance taken out by a married man upon his own life for the benefit of his wife, nothing being said as to who shall be the beneficiary in case she shall not survive to take at the maturity of the policy, vests a contingent right in the insurance fund in her, which right is her sole and separate property, free from the control or disposition of the husband or person taking out the insurance, and beyond the reach of the creditors of the person whose life is insured, the

same as if the policy were taken out by herself. (3) Such a policy vests in her children a contingent right to the insurance, safe from disturbance by her or the person whose life is insured, or by such children prior to the maturity of the policy and the fund reaching their hands. "It shall inure to her separate use and benefit, and that of her children," the statute says, thereby reading into the contract of insurance a right in such children as free from interference as the right in the primary beneficiary, unless the policy, by its terms, otherwise provides. Evidently, that right in the children does not contemplate a joint enjoyment of the fund in any event by the mother and her children. It is a mere right to take if the mother does not survive to do so. This language makes that plain:

"In case of her surviving the period or term of such policy, the amount of the insurance shall be payable to her or her trustee for her own use and benefit," etc.

(4) A policy of insurance of the character mentioned, with the added element providing expressly for disposition of the insurance fund upon the contingency of the wife not surviving till the maturity of the policy, vests in the wife the same right in all respects as before indicated. (5) The policy being so worded that the children do not, by force of law, obtain a vested right to the insurance contingent upon their surviving till the maturity thereof, if the mother's interest therein is assignable, it is also assignable to the extent of her interest when her children do, by force of the statute, possess the contingent vested interest before indicated. That is, if it is consistent with the statute to hold that the right secured to a married woman under the statute is assignable by her in any case, it is assignable in all. The importance of this will be seen when we compare our statute with that of New York and the decisions under the latter statute, in view of the conceded fact that if, under the law, a married woman's right to the insurance made for her benefit is not assignable, it can-

not be reached by her creditors. (6) Lastly, the whole scope of the statute shows that the purpose thereof was that a policy of insurance made upon the life of a person for the benefit of a married woman, the policy being kept in force, shall be to all intents and purposes her property, free from all interferences, save, of course, forfeitures under the conditions of the policy, preventing, in case she survives the insurance period, the insurance fund being, using the terms of the statute, "payable to her or her trustee for her own use and benefit,"— that is, payable to her in the literal sense of the words used. The words which follow the quoted language, "free from the control, disposition or claims of her husband and of the person effecting or assigning such insurance and from the claims of their respective representatives and creditors," are not used in a restrictive sense, but indicate, not only that the insurance fund shall be preserved so that it may reach her hands, but that it shall then be free from all liability to appropriation contrary to her wishes for the payment of the debts or claims of her husband or of the person effecting or assigning the insurance, and from the claims of their respective representatives and creditors; that it shall be her absolute property at that time, in personal possession, subject thereafter, of course, to claims upon her the same as any other property she may possess.

From what has been said it would seem that the dominant purpose of the whole course of legislation resulting in sec. 2347 as we now find it, has been to provide, not for married women, but for widows, and that the full scope thereof cannot be effected other than by holding a married woman powerless to in any manner, directly or indirectly, assign insurance made for her benefit; that she is as powerless in that regard as the person taking out the insurance for her benefit; that the statute, while giving to her upon the one hand a right to take out insurance upon her husband's life without his consent, upon the other, when insurance has been made for her

benefit, whether by her own act or the act of her husband, or of any other person, it creates a disability as to her parting with the insurance; it preserves the insurance to the end that, in case of her surviving the insurance period, it may then be payable to her for her own use and benefit. It is well known that the original purpose of the statute was to safeguard married women and their children against inability to provide for their wants in the event of widowhood and infancy. That being the case, it would be absurd, it would seem, to hold that the legislature failed in so important a particular as to leave a married woman's beneficiary right under a policy of insurance liable to be taken from her *in invitum* by creditors or otherwise. In view of the mischief which it is supposed the statute was intended to remedy, we would be precluded from holding, under the most familiar rules of judicial construction, that there was an utter failure to voice such purpose in the statute, if it can be reasonably avoided consistent with the language of the law, viewing the same in the broadest sense the language will permit. That, within such broad field, there can be read out of the language of the statute nonassignability of a married woman's right in a policy of insurance made for her benefit, exemption of it from claims of creditors generally, absolute disability on her part, directly or indirectly, to defeat the wisdom of the law, it seems has already been demonstrated. But we might safely rely, without the labor of carefully analyzing such language in all its aspects, upon a long line of decisions in New York under a similar statute, reaching back for nearly half a century, the statute itself being upwards of sixty years old. Our statute, in the main, originated here with chapter 158, Laws of 1851. That, in most of its essential particulars— all of them, it would seem, as regards the questions here for decision—was adopted from the statute of New York, chapter 80, Laws of that state for 1840. The latter statute related only to insurance taken out by a married woman upon

the life of her husband without his consent.  Our statute
was a substantial copy thereof, except that it gave a married
woman the same right in insurance taken out for her benefit
by her husband or any one else, as in insurance taken out
by her upon her husband's life.  Such features are all pre-
served in the present statute, and in those respects where, as
in *Foster v. Gile,* and other cases to which .we have referred,
the judicial policy of this state was at one time contrary to
that of New York as regards married women beneficiaries,
harmony has been wrought between the two by the law of
1891, creating a disability on the part of the husband of a
married woman who shall have taken out insurance for the
benefit of his wife, from subsequently disposing of the policy
or in any way changing the beneficiary so as to defeat her
rights, at least without her consent.

On the question of the assignability by a married woman
of her mere beneficiary right in insurance policies under the
statutory policy under discussion, the decisions of New York,
under its act of 1840, apply, in our judgment, fully to our
statute.  The subject was first considered there in *Eadie v.
Slimmon,* 26 N. Y. 9, decided in 1862.  The facts were that
a married woman was induced to assign her right in a policy
of insurance taken out upon her husband's life.  Subse-
quently the husband died.  The suit was between her and her
assignee as regards the true ownership of the insurance fund.
The decision was in her favor upon the ground that the policy
of the statute disabled her from trafficking in any way with
her insurance; that under it a policy of insurance made for
her benefit is to all intents and purposes her property, and
though it is a chose in action in the general sense, it is not one
which she can sell or which can be taken from her by her
husband or anybody else.  This language was used:

"We think the intent of the statute was to make these
policies a security to the family of any married man and a
provision for their use and benefit, and that this intent would

be defeated if they were held to be assignable by the wife like ordinary choses in action belonging to her in her own right as her separate property."

Upon a reargument on that question, Mr. Justice DENIO, delivering the opinion of the court, said of the statute:

"It is special and peculiar, and looks to a provision for a state of widowhood, and it would be a violation of the spirit of the provision to hold that a wife, insured under this act, could sell or traffic with her policy as though it were realized personal property or an ordinary security for money."

The same subject was treated at considerable length in *Barry v. Equitable L. Ass. Soc.* 59 N. Y. 587, and the previous decision was sustained, both under the rule of *stare decisis* and because the court, upon an appeal to reconsider the matter, considered such decision correct. This language was used in summing up the matter:

The act was "not for the sake of the woman while a wife, but when a widow; not that she might sell or assign the contingency which was created by the policy, but that it should be kept for her until, by the death of her husband, she surviving, it became realized personal property. . . . The act confers a special privilege and is in the nature of a law exempting goods from execution. The privilege is given in view of an especial legislative intention and policy, which would be subverted if the contingent interests arising under it could be treated and dealt with as the separate property of a married woman, to be disposed of or affected by her subsequent contracts."

To the same effect are *Wilson v. Lawrence,* 76 N. Y. 585; *Whitehead v. New York L. Ins. Co.* 102 N. Y. 143, 6 N. E. 267; *Smillie v. Quinn,* 90 N. Y. 492; *Baron v. Brummer,* 100 N. Y. 372, 3 N. E. 474; *Brick v. Campbell,* 122 N. Y. 337, 25 N. E. 493; *Stokes v. Amerman,* 121 N. Y. 337, 24 N. E. 819. In *Baron v. Brummer,* as counsel for respondent suggests, the very question presented here was decided in favor of the exemption of a married woman's beneficiary interest in a policy of insurance, from the claims of her credit-

ors, basing the same upon the policy of the statute, as before indicated.   That case, as well as others we have cited, was decided after the New York statutes were so changed as to remove the disability of a married woman to assign such beneficiary rights.   It was held, notwithstanding such change, that the policy of the statute yet safeguarded her against hostile seizures of such rights; that such change merely gave her power to sell her beneficiary interests by conforming to the peculiar provisions of the law on the subject, but did not, by implication, carry with it the right of her creditors or anybody else, in any hostile way, to interfere with her contingent insurance interest.   The reasoning of these cases seems sound.   If the question were new, doubtless we should reach the same conclusion as we do by the aid thereof.   Since our statute was borrowed from New York, notwithstanding that occurred before it had received judicial construction in the home state, the long line of decisions to which we have referred might well be regarded as controlling.

*By the Court.*—The judgment is affirmed.