ILLINOIS BANKERS' LIFE ASSOCIATION v. RHODES.

Opinion delivered January 31, 1921.

1. INSURANCE—SURRENDER OF POLICY—EFFECT.—A soliciting agent of an insurance company having no authority to make contracts for the company, but authorized to make deliveries of an insurance policy, has authority to permit insured to examine the policy before delivery; and where the agent consented to the surrender of the policy and delivered to insured the premium note, the contract of insurance was terminated.

2. INSURANCE — RIGHT OF BENEFICIARY TO OBJECT TO SURRENDER.— One who is named as beneficiary in an insurance policy which gave the insured the absolute right to change the beneficiary has no vested interest in the policy which would limit the right of insured to surrender the policy.

3. INSURANCE—RIGHT TO SURRENDER POLICY.—An insured having the right to surrender a policy of life insurance may surrender it at any time by agreement with the agent authorized to deliver it; the consent of the company not being essential.

Appeal from Clay Circuit Court, Eastern District; R. H. Dudley, Judge; reversed.

T. E. Helm and W. E. Spence, for appellant.

1. There was no evidence to sustain the verdict. It is clearly shown that the policies were rejected or voluntarily surrendered and that the contract was abandoned and rescinded.

2. Whether or not the right of cancellation is reserved in a policy, there may be an immediate cancellation, abandonment or rescission of the contract by agreement of the insurer and insured, either by parol or in writing. 112 Ark. 582; 55 S. E. 11; 42 S. W. 180; 94 Pa. St. 394; 81 Tenn. 340; 109 Ark. 17; Cooley's Briefs on Ins., 2833. 89 N. E. 612, 49 Ind. 411, is conclusive of this case.

3. The assured had the right under the policy to change the beneficiary, as he had no vested right. 19 Cal. App. 191; 52 N. Y. Supp. 766. A policy may be surrendered by mutual agreement so as to terminate the rights and obligations of the parties. 77 N. E. 951; 178 U. S. 345. Stough voluntarily surrendered his policy,

as he had a right to do, and there was no liability. The policy and the premium note constituted the contract and it was rescinded by mutual agreement. 39 Am. Rep. 792; 12 S. W. 155. The beneficiary is estopped by the abandonment and rescission. 109 Ark. 17.

4. The policy was issued on the life of Isaac C. Ward, and he had the right to change the beneficiary, and the beneficiary had no vested right in it and could not prevent the surrender or abandonment. 1 Bacon on Life & Acc. Ins., 361, 364; 36 Pac. 113; 89 N. E. 612; 52 N. Y. Supp. 766; 19 Col. App. 191.

5. It was error for the court to refuse to permit appellant to show that Magee, the State agent, never remitted the part of the premium received to the company and that the money was replaced or credited back to Wright, the local agent.

6. The court erred in its instructions. It was within the power of the agent and Ward to abandon or rescind the contract. 81 Tenn. 340; 68 So. Rep. 871; 89 N. E. 612. There was no evidence to sustain the verdict, and the cause should be reversed and dismissed.

*L. Hunter* and *S. R. Simpson,* for appellee.

1. The case was properly decided by the jury, and should be affirmed unless the evidence shows there was a mutual agreement between Ward and some one representing the company to rescind and cancel the policy; that was the only issue, and there is no error in the instructions, and the verdict is conclusive. 25 Cyc. 784; 73 S. W. 978; 65 Ark. 581; 122 *Id.* 58; 94 *Id.* 578.

2. There was no abandonment of the contract. 25 Cyc. 785. Delivery of the policy completed the contract and binds the company in the absence of a mutual agreement to abandon or cancel. 130 Ark. 387; 97 *Id.* 229; 65 *Id.* 581.

3. Penalty and attorneys' fees were properly allowed. 98 Ark. 132; 100 *Id.* 10; 102 *Id.* 675; 104 *Id.* 120.

McCULLOCH, C. J.   This is an action instituted by appellee on a policy of insurance written by appellant on the life of Isaac C. Ward, payable, in the event of his death, to appellee who was his wife.  The material facts in the case are undisputed; and, if appellee is entitled to recover, the alleged errors of the court in its instructions and in its ruling on the admissibility of evidence are unimportant.

Appellant is a foreign corporation engaged in the life insurance business, and J. D. Wright was its local soliciting agent in Clay County, Arkansas.  On July 26, 1918, Isaac C. Ward gave his written application to Wright for a policy in the sum of $1,500, and gave his note to Wright for a sum sufficient to cover the first semi-annual premium.  Wright forwarded the application to appellant, and a policy was issued, dated September 3, 1918, and was forwarded to Wright to deliver to Ward on the payment of the premium.  Wright delivered the policy to Ward, the exact date of the delivery not being shown in the evidence, but on October 10, 1918, Ward returned the policy to Wright by mail, with a letter to Wright stating, in substance, that the policy was not satisfactory to him and that he was returning it.   His reasons for refusing to keep the policy were set forth at length in the letter.  On October 14, 1918, Wright replied to the letter urging Ward to accept the policy and giving reasons why he thought that Ward was making a mistake in deciding to drop it.  In the meantime Wright had placed the policy in the hands of the cashier of a bank where he had left Ward's note for collection. Wright also forwarded to the company at some time during these transactions, the particular time not being shown in the evidence, a sum sufficient to pay the company's part of the first semi-annual premium.

Ward wrote to Wright again on October 20, 1918, reiterating his determination not to take the policy.  In that letter he made this statement: ''Your insurance is not what I want and not what I taken it for and have

made other arrangements. And the note I gave you is no good and no other note like it. But, Joe, I don't want you to be out your money for nothing, so just to be fair with you, I am willing to pay you what you have actually been out if it is no more than six or seven dollars." Ward wrote to Wright again under date of November 17, calling attention to the fact that he had not received a reply to his last letter and stating that he was willing to pay Wright $10 if he was out that much in the transaction, but that he would not pay the note as he felt certain that the policy did not afford satisfactory insurance. Wright finally accepted the offer and directed the cashier of the bank to surrender the note to Ward on the payment of ten dollars. Ward paid that sum to the cashier of the bank and received his note. This occurred on November 29, 1918, and on December 3, 1918, Wright, on being informed that the payment had been made, wrote to Ward acknowledging receipt of the payment, but urging Ward not to drop the policy. His letter contained this sentence, "Now if you want to drop this I feel that I have done all I know to do." This appears to have been the last communication between the two parties. At least nothing else is shown by the proof. It does not appear that the policy was returned to the company, nor that the company was advised of Ward's refusal to keep the policy, but it was never returned to Ward.

Ward died on January 19, 1919. After Ward's death Wright, at the request of appellee, communicated to the cashier of the bank appellee's request that the cashier write to the company for blanks to make proof of death. On April 15, 1919, the president of the appellant company, without notice of the fact that Ward had not kept the policy, sent out a formal notice by mail directed to Ward, calling attention to the fact that the quarterly call for assessments would be due the next month. It is shown that this was a circular letter which was sent in all instances of advance notice to the assured of the

maturity of premiums.   According to the undisputed
evidence, Ward did everything in his power to signify
his refusal to accept the policy and to abandon it.   He
returned it to Wright, who was the agent of the com-
pany for the purpose of making the delivery, and he
steadily refused to accept the policy and finally con-
summated the agreement with Wright to pay $10 as re-
imbursement to Wright for the amount he had expended,
and to receive his note back and treat the policy as can-
celed or "dropped" as he expressed it.

Wright was the soliciting agent, and it does not ap-
pear that he was authorized to make contracts for ap-
pellant, but the policy was sent to him with authority to
make delivery thereon on payment of the premium, and
this clothed him with all things necessary in connection
with the delivery of the policy.   It was in fact handed
over to Ward, but later returned to Wright with the
statement that it was not satisfactory and would not be
accepted.   This was an abandonment of the policy and a
refusal to treat it as having been delivered, and was
tantamount to a refusal in the first instance to accept the
policy.   Wright's authority to deliver the policy included
the power to adopt the method of delivery and to give
Ward an opportunity to examine it, and the effect of
his allowing Ward to return the policy was the same as
if he had merely handed it to him for the purpose of
examination and had allowed him to return it when
found to be unsatisfactory.   The fact that Wright was
not a general agent of the company with authority to
make contracts is not material, for the reason that, as
before stated, the return of the policy with Wright's
consent made it the same as if the policy had never been
delivered to Ward.   The policy, in express terms, gave
the assured the right to change the beneficiary at will,
and for that reason appellee as the specified beneficiary
had no vested right or interest in the policy limiting the
right of the assured to surrender or abandon it, even if
it had been finally accepted.

Ward was not bound to keep the policy. His sole obligation was to pay the premium and he had the right to abandon and surrender the policy whenever he saw fit to do so. This was completely done by the surrender of the custody of the policy and his agreement with Wright that his note was to be surrendered on the payment of $10 and that the policy should be treated as canceled. The consent of the company was not essential, for, as before stated, it had no right to insist on Ward keeping the policy. Its part of the premium had been paid, it is true, but that was not paid by Ward. It was paid by Wright, and Ward reimbursed Wright on the express agreement that his note was to be surrendered and the policy canceled.

The case of the *Equitable Life Insurance Society* v. *Stough,* 45 Ind. App. 411, is precisely like the present case as to the facts, and the court reached the conclusion, as we do in this case, that the policy was not in force at the time of the death of the assured, and that there was no liability. The only difference in the facts in that case was that there was a fixed time specified within which the policy could be delivered, and it was to be returned to the company if not delivered within that time. It does not appear that there was any such rule in the present case, but we do not attach any importance to that difference in the facts. In that case there was a note given for the premium, and the agent paid over to the insurance company its portion of the first premium, but thereafter, by agreement between the assured and the agent, the note was surrendered and the policy canceled.

We are of the opinion that the assured completely abandoned his policy and for a consideration canceled his obligation for the premium note and with it the policy itself, and that there was no liability, even though the company had received from its own agent the portion of the premium to which it was entitled under the contract of the agent. The facts being undisputed, it is unneces-

sary to remand the cause for further proceedings. The judgment will, therefore, be reversed and the cause dismissed.

WOOD and HART, JJ., dissent.