First Wisconsin National Bank of Milwaukee, Appellant, vs. Strelitz, Respondent (Northwestern Mutual Life Insurance Company, Garnishee).

*October 11—November 9, 1932.*

For the appellant there was a brief by *Corrigan, Backus, Ruppa, Bortin & Backus* of Milwaukee, and oral argument by *Walter D. Corrigan, Sr.* and *August C. Backus*.

For the respondent there was a brief by *Robert A. Hess* and *Clement Winzenburg,* both of Milwaukee, and oral argument by *Mr. Winzenburg*.

FOWLER, J. Whether the judgment of dismissal should be affirmed depends on the construction to be given to sec. 246.09, Stats. The provision of that statute which must rule the decision is that—

. . . "any person, whether her husband or not, effecting any insurance on his own life or on the life of another may cause the same to be made payable or assign the policy to a married woman or to any person in trust for her or her benefit; and every such policy, when expressed to be for the benefit of or assigned or made payable to any married woman or any such trustee, shall be the sole and separate property of such married woman, and shall inure to her separate use and benefit and that of her children, and in case of her surviving the period or term of such policy the amount of the insurance *and all proceeds and avails therefrom* shall be payable to her or her trustee for her own use and benefit, free from the control, disposition or claims of her husband and of the person effecting or assigning such insurance and from the claims of their respective representatives and creditors, *whether or not the right to change the beneficiary was reserved or permitted by the terms of the policy."*

The garnishment statute, sec. 267.01, provides that any creditor may proceed by garnishment against any person who shall be indebted to the creditor's debtor. Under the facts stated the insurance company is indebted to the plaintiff's debtor, Mrs. Strelitz, and *a priori* the amount owing is subject to garnishment. It is garnishable unless the amount due is exempt from garnishment by statute. There is no statute declaring it exempt unless the provision above quoted does so. The exemption feature of that provision, giving to its language its plain meaning, applies, not to the creditors of the widow of the deceased insured, but to the creditors of her husband and the creditors of such persons as may have effected or assigned insurance for her benefit. The word "their" in the phrase "and from the claims of *their* respective representatives and creditors," taking the language as it

stands, refers to the representatives and creditors of the deceased husband or the representative and creditors of the person effecting or assigning the insurance for the benefit of the married woman. There is no other antecedent to which it can possibly refer.

The respondent contends that the construction of the statute given in *Ellison v. Straw,* 116 Wis. 207, 92 N. W. 1094, compels us to hold that the money due the principal defendant is not subject to garnishment. The trial court was of that opinion. The statute was then the same as now, except that there has since been added thereto the words italicized in the above quotation from the statute. The added words do not at all affect the construction of the statute upon the point here involved. In that case the surrender value of insurance on the life of a husband payable to the wife not matured by the death of the husband, was sought to be garnished upon a judgment against both the husband and wife. The court held that under the statute the surrender value of the policy was not subject to garnishment by creditors of either the husband or the wife. Money payable to a widow on a matured policy on her deceased husband's life was not involved in that case, and we do not understand that the court intended the decision to go beyond the facts involved. We understand as stated in *Canterbury v. Northwestern Mut. Life Ins. Co.* 124 Wis. 169, 193, 194, 102 N. W. 1096, that "The question there presented and decided was whether *the interest* of a married woman *in an insurance policy* on her husband's life was, *during his life,* exempt from her debts." That is all the court could decide in that case, and anything in the opinion beyond that was *obiter* and not binding upon the court upon the question here involved. What the *Ellison Case* was intended to decide is stated on page 216 of the opinion:

. . . "The whole scope of the statute shows that the purpose thereof was that a policy of insurance made upon the

life of a person for the benefit of a married woman, the policy being kept in force, shall be to all intents and purposes her property, free from all interferences, save, of course, forfeitures under the conditions of the policy, preventing, in case she survives the insurance period, the insurance fund being, using the terms of the statute, 'payable to her or her trustee for her own use and benefit,'—that is, payable to her in the literal sense of the words used. The words which follow the quoted language, 'free from the control, disposition or claims of her husband and of the person effecting or assigning such insurance and from the claims of their respective representatives and creditors,' are not used in a restrictive sense, but indicate, not only that the insurance fund shall be preserved so that it may reach her hands, but that it shall then be free from all liability to appropriation contrary to her wishes for the payment of the debts or claims of her husband or of the person effecting or assigning the insurance, and from the claims of their respective representatives and creditors; that it shall be her absolute property at that time, in personal possession, subject thereafter, of course, to claims upon her the same as any other property she may possess."

A literal construction of the language in the last clause of the above quotation "that it shall be her absolute property at that time, *in personal possession*," might lend color to a holding that the money must be manually delivered to the widow, and therefore not subject to garnishment. But the remainder of the clause, "subject thereafter, of course, to claims upon her the same as any other property she may possess," indicates that the court was of opinion that just as soon as the money should come into the widow's hands it would be subject to her debts. If the moment after insurance money payable to a widow comes into her hands it is subject to her debts it is not obvious why it is not subject to garnishment for them the moment before it is paid. It is a debt due her, and debts due her are garnishable for her debts. We cannot believe that the court intended to make such an unreasonable distinction as that money paid to a person on a debt due him is subject to execution but is not subject to garnishment be-

fore it is paid, and if the court did so intend, we are not disposed to make such a distinction now. The surrender value of the policy in the *Ellison Case* was not payable to the insured's wife at all. There would be nothing payable to her on the policy in any case until her husband's death, and then not the surrender value. but the full amount of the policy would be payable. The point on which that case hinged was that there was nothing due to the wife on the policy when the garnishment summons was served, there was then no debt due her from the company, and the company then had nothing in its possession belonging to her, and there was therefore nothing garnishable. This is all there was need or occasion to say in that case and whatever else was said in it is without force as precedent here. Much was said in that case about a wife's interest in an insurance policy payable to her on the death of her husband not being assignable. It was there considered that her such interest was not assignable, and that it was not assignable was put forth as a reason for holding that the surrender value of such a policy was. not subject to garnishment. In the *Canterbury Case,* at page 195 of the opinion, what was said in the *Ellison Case* about the non-assignability of the wife's interest in an insurance policy was withdrawn. We here withdraw whatever was said in that case in seeming conflict with what we now hold,—that the amount payable to a widow on a matured insurance policy on her deceased husband's life is subject to garnishment for her debts.

If support for this holding is needed other than the plain language of the statutes cited, it is supplied by the Equal Rights Act of the 1921 legislature which gives to women the "same rights and privileges as men in the . . . freedom of contract . . . and in all other respects." Under this act women have the same rights and privileges as men in the making of contracts. If their contracts could not be enforced the same as the contracts of men,—if their creditors did not

have the same remedies for the collection of their debts as they have for the collection of the debts of men, this would deprive them of equal opportunity with men to borrow money and indirectly destroy their equality of rights. *First Wis. Nat. Bank v. Jahn*, 179 Wis. 117, 190 N. W. 822.

*By the Court.*—The judgment of the circuit court is reversed, with directions to enter an order denying the motion to dismiss the proceeding.

OWEN, J. (*dissenting*). It was held in *Ellison v. Straw*, 116 Wis. 207, 92 N. W. 1094, that the proceeds of a life insurance policy payable to a wife were not subject to garnishment for her debts, and this whether the cash surrender or the matured value of the policy was sought to be subjected. The decision in that case was rested upon two propositions: first, that the interest of the wife in the insurance policy was not subject to assignment; and second, that the statute (now sec. 246.09) revealed a legislative intent to exempt the proceeds of such a life insurance policy, whether it be the cash surrender or the matured value thereof, from the debts of the widow.

In *Canterbury v. Northwestern Mut. Life Ins. Co.* 124 Wis. 169, 102 N. W. 1096, the holding that the interest of the wife in the insurance policy was not assignable was withdrawn. This removed one basis upon which the decision in *Ellison v. Straw* rested. However, the decision in *Ellison v. Straw* was not withdrawn. The holding that the legislature intended to exempt the proceeds of such life insurance policies was referred to in the *Canterbury Case* as follows:

"With no opposing adjudications in this state on that question, we reached the conclusion and decided that the various provisions in our statutes indicated a purpose to provide for the widow and her children; and that such liability to her creditors was so inconsistent with such purpose that we were forced to believe that the legislature intended that her interest in such insurance policy, even though her sole and

separate property, was nevertheless exempt from the reach of creditors. That question is not here involved, but we have no disposition or purpose to indicate that if it were we should hesitate to adhere to that decision." Page 194.

Those who constituted this court at that time were not sentimentalists. They simply discovered in the statute a legislative intent to preserve the proceeds of life insurance policies to widows and orphans—a public policy quite analogous to that which enjoins the legislature to enact wholesome laws exempting a reasonable amount of property from seizure or sale for the payment of debts. Wis. Const., art. I, sec. 17.

Widows and orphans are most proper objects of legislative solicitude, and when it is reflected that the average insurance policy issued throughout this country is approximately $3,500, and certainly does not exceed $4,000, the exemption is not to be wondered at. For many years the homestead of the debtor, no matter what its value, was exempt. The fact that the proceeds of an insurance policy, no matter what its amount, was also made exempt, found complete analogy in the exemption of a homestead before a limitation was placed upon the value of the homestead. This construction of the statute has not received legislative repudiation for a period of thirty years. The statute has been amended in one or two particulars, as indicated in the majority opinion, but such amendments rather emphasize the intent of the legislature to exempt than the contrary. The construction of a statute which has received legislative acquiescence for so long a period of time should be regarded as the settled law of the state, and not overruled because it does not now seem sound to a majority of the present members of this court. There should be more stability to the law. The law as so established proceeded from legislative act and should be changed only by legislative act.

It is contended that what was said in *Ellison v. Straw, supra,* with reference to the proceeds of matured insurance policies, was *obiter,* because that case did not involve the proceeds of a matured policy. After quoting the statute, the court propounded the question in the following language:

"Does that language disclose a legislative purpose to guard the insurance upon the life of a person, designed, in the manner indicated in the statute, for a married woman, absolutely against the claims of her creditors as well as his, and to so entrench the same that, if kept alive till the policy matures, in the contingency that she then survive, the insurance fund will reach her hands without interference from anybody?"

This question, as so propounded, was taken up, considered, and decided, and the decision rested in part upon the ground that the statute revealed a legislative intent to exempt the proceeds of such policies from the debts of the widow. I say that that became *stare decisis,* under the rule "that when a court of last resort intentionally takes up, discusses, and decides a question germane to, though not necessarily decisive of, the controversy, such decision is not a *dictum* but is a judicial act of the court which it will thereafter recognize as a binding decision." *School District v. First Wisconsin Co.* 187 Wis. 150, 203 N. W. 939; *Chase v. American C. Co.* 176 Wis. 235, at p. 238 (186 N. W. 598).

Neither can I perceive what bearing the Equal Rights Act of 1921 has upon the question. A general act conferring upon married women the power to contract should not be held to impliedly amend an act which deals specifically with questions of exemptions. In view of the law as it has existed for a period of thirty years, I think the decision in this case amounts to judicial legislation, and I cannot concur.