FISCHER *v.* NORTHWESTERN MUTUAL LIFE INSURANCE CO.

1. INSURANCE—SURRENDER OF POLICY—FRAUD—UNFAIR ADVANTAGE.
   Claim that surrender of a life insurance policy was obtained through fraud and unfair advantage *held*, without merit where evidence does not indicate that insured's mental capacity was affected by serious heart ailment with which he was then suffering and he was informed by insurer's agent that premium then due could be taken care of by an increased loan on the policy.

2. SAME—SURRENDER BEFORE EXPIRATION OF GRACE PERIOD—DUTY OF AGENT.
   Surrender of ordinary life insurance policy at expiration of policy year became effective immediately and barred beneficiary's claim after death of insured prior to expiration of 31-day grace period allowed for payment of premiums, where insurer's agent complied with insured's request to "take care of it for me and get out of it what you can for me" by promptly forwarding surrendered policy to home office, the agent not being under duty to tell insured effect of grace period.

3. SAME—CONSIDERATION FOR SURRENDER OF POLICY—CASH SURRENDER VALUE.
   No additional consideration is required to validate surrender of ordinary life insurance policy prior to expiration of grace period at end of policy year in case where policy contains no express limitation as to time when cash surrender value might be demanded.

4. SAME—PAYMENT OF PREMIUM—SURRENDER—GRACE PERIOD.
   Payment of premium for ordinary life insurance is due on the date fixed in the policy, so that surrender of policy during period of grace is not a surrender of paid-for insurance but merely of the privilege of postponement of payment.

5. SAME—SURRENDER WITHOUT CONSENT OF BENEFICIARY.

    Surrender of ordinary life insurance policy *held,* valid without consent of beneficiary, wife of insured, who had not been irrevocably designated as beneficiary.

6. APPEAL AND ERROR—CONTRACTS.

    Decision is not made as to whether an ordinary life insurance policy is a Michigan or Wisconsin contract where result is the same whichever it is.

Appeal from Wayne; Moll (Lester S.), J. Submitted January 12, 1934. (Docket No. 8, Calendar No. 37,408.) Decided June 4, 1934.

Assumpsit by Josephine M. Fischer against Northwestern Mutual Life Insurance Company, a Wisconsin corporation, on a life insurance policy. Judgment for defendant. Plaintiff appeals. Affirmed.

*Robert M. Drysdale,* for plaintiff.

*Carey, Armstrong, Weadock & Essery,* for defendant.

EDWARD M. SHARPE, J. Plaintiff is the beneficiary of a policy in defendant insurance company on the life of her husband, Carl H. F. Fischer, who on August 12, 1928, insured with defendant company and received therefrom an insurance policy known as a "term policy." This policy, on August 5, 1931, was converted into an ordinary life policy with an annual premium due and payable on August 12th. In addition to this policy, Mr. Fischer carried two term policies with defendant company on which premiums were also payable on August 12th. Each of these policies contained a clause providing a 31-day period of grace for the payment of premiums.

Mr. Fischer became ill about July 8, 1932, with pleurisy and pneumonia. For some time prior

thereto he had been suffering from a rheumatic heart. On August 10, 1932, Mr. Fischer wrote to the Detroit agent of the defendant company the following letter in his own hand:

"Aug. 10, 1932.
"MILTON L. WOODWARD, Gen. Agt.,
"Union Guardian Bldg.
"Detroit, Mich.
"*Gentlemen:*
"This is to notify you that I desire to cancel policy No. 2098921 in the Northwestern Mutual Life Insurance due Aug. 12, 1932. The policy is a straight life, sum $23,000. There is a dividend of $231.38 on this policy due Aug. 12th. Kindly credit my account with this amount and use same to pay other premiums due Aug. 12, 1932. Whatever cash surrender value there is to the policy in question, please put same to my credit.
"Very truly yours,
"CARL H. F. FISCHER.
"848 Lawrence Ave.
"Detroit, Mich."

In response to this letter, Mr. Hibbard, an agent of the defendant company, called to see Mr. Fischer and secured a surrender of the policy. During the conversation incidental to the signing of the surrender, Mr. Fischer said to the agent,

"You take care of it for me and get out of it what you can for me, take care of it for me."

The surrender was forwarded to the home office at Milwaukee, Wisconsin, and was accepted August 13, 1932. Mr. Fischer's illness continued until his death, which occurred August 25, 1932. The company applied the cash surrender value of the policy to the payment of premiums on the other two policies and forwarded a check for the balance of $6.32 to the assured. This check was not received until after

Mr. Fischer's death and was then returned to defendant. Plaintiff is now suing on the $23,000 policy.

It is the claim of the plaintiff that the surrender was obtained by fraud and unfair advantage; that the cancellation was contrary to the instructions of the insured, in that the policy through the 31-day grace period would protect the insured until September 12, 1932; that the surrender was without consideration; and that the surrender was ineffective because it was secured without the consent of plaintiff, the contract having been made in Wisconsin and therefore controlled by the Wisconsin statute. This statute, enacted in 1891, reads as follows (Wisconsin Statutes 1931, § 246.09):

"Any married woman may, in her own name or in the name of a third person as her trustee, with his assent, cause to be insured for her sole use the life of her husband, son or other person for any definite period or for the natural life of such person; and any person, whether her husband or not effecting any insurance on his own life or on the life of another may cause the same to be made payable or assign the policy to a married woman or to any person in trust for her or her benefit; and every such policy, where expressed to be for the benefit of or assigned or made payable to any married woman or any such trustee, shall be the sole and separate property of any such married woman and shall inure to her separate use and benefit and that of her children, and in case of her surviving the period or term of such policy the amount of the insurance and all proceeds and avails therefrom shall be payable to her or her trustee for her own use and benefit, free from control, disposition or claim of her husband and of the person effecting or assigning such insurance and from the claims of their respective representatives and creditors."

By amendment in 1931, effective July 3, 1931, the following lines were added:

"Whether or not the right to change the beneficiary was reserved or permitted by the terms of the policy."

We are not impressed with plaintiff's claim that the surrender was obtained through fraud and unfair advantage. While it is true that decedent was suffering from a serious heart ailment, yet it did not affect his mental capacities as evidenced by the letter he wrote to the company agent two days before he signed the surrender. This letter is an excellent example of a business letter and absolutely void of anything denoting a mental disturbance. Neither can it be said that Mr. Hibbard, the company agent, took any advantage of decedent's condition. Mr. Hibbard was invited there by decedent and before the surrender was signed advised decedent that the premium on the policy could be taken care of by an increased loan. Mrs. Fischer testified that her husband was rational when he signed the surrender and Dr. Price could not classify decedent's illness as a mental disorder.

We next come to plaintiff's contention that the surrender should have become effective as of a later date, but not beyond September 12, 1932. This is based upon decedent's instructions to the company agent when he said, "Take care of it * * * and get out of it what you can for me." While it is true that decedent could have deferred payment of the premium until September 12th, yet there were no such instructions given to the company agent at the time the surrender was signed. There was no duty upon the part of the agent to tell the assured of the effect of the 31-day grace period. We can assume that neither party had any idea that a month's time

would have any material effect on the rights of the insured or his beneficiary. Neither the company agent nor the physicians were aware that the assured's afflictions were to be so imminently fatal. We think that the action of the agent in forwarding the surrender to the home office when he did was a compliance with the insured's request.

As to whether there is consideration for a surrender prior to the expiration of the period of grace, the recent case of *Lipman* v. *Equitable Life Assurance Society of the United States* (C. C. A.), 58 Fed. (2d) 15, is in point. In this case the premium was due October 5th with one month's grace period. On October 10th insured sent in her policy with instructions to cancel it and pay her the cash surrender value. On October 14th the policy was received by the company and canceled. Somewhat later on the same day the insured was killed in an auto accident. The insured's husband sued on the policy. It was held that although the terms of the policy gave an option to surrender only ''upon default in payment of premiums'' there was such default immediately on the due date of the premium and prior to the expiration of the grace period and that the surrender was valid. In the instant case, there being no express limitation whatever as to the time when the cash surrender value might be called for, *a fortiori* the date of surrender has no bearing on the question of consideration.

Many States, including Michigan, give the insurance company the right to charge interest on a premium during the grace period. This indicates that the premium is due on the date fixed in the policy, and that payment during the grace period is a postponed payment relating back to the date fixed in the policy. While Mr. Fischer might have waited until the end of the grace period before surrender-

ing his policy, it does not follow that he could not have surrendered it when he did. The only privilege Mr. Fischer had was to defer payment of the premium due August 12th. He did not surrender paid-for insurance but merely the privilege of postponement.

It is urged by the plaintiff that the surrender was ineffective because it was secured without the consent of plaintiff. The policy reserved the right to change the beneficiary and also contained the following clause:

"Upon receipt of this policy and a full and valid surrender of all claims hereunder, without the consent or participation of any beneficiary not irrevocably designated or any contingent beneficiary, the company will pay its then cash surrender value."

Unmistakably the intent and purpose of this provision was to reserve to the insured the right to surrender the policy without the consent of the beneficiary. In our opinion that purpose has been aptly expressed.

It is not contended that there is any public policy or statute of Michigan which would prevent the carrying out of the clearly expressed intent of the parties. It is, however, contended that the Wisconsin statute quoted earlier in this opinion renders the express provision of the policy nugatory as against plaintiff, a married woman.

The Wisconsin cases, contrary to the general rule, are to the effect that the consent of the beneficiary is not necessary to a surrender of the policy. The statute has been held to change this rule in so far as regards the rights of married women as beneficiaries of life insurance policies. *Ellison* v. *Straw,* 116 Wis. 207 (92 N. W. 1094). Prior to the amendment in 1931, the Wisconsin court held that the consent of a married woman beneficiary was not required to

a surrender by the assured where the policy provided, "It is understood that in the event of the surrender of this policy, the beneficiary hereunder shall have no claim whatever upon said company." *Hilliard* v. *Wisconsin Life Ins. Co.,* 137 Wis. 208 (117 N. W. 999). Likewise it was held that a policy might validly reserve the right to change the beneficiary, although originally payable to a married woman. *National Life Ins. Co.* v. *Brautigam,* 163 Wis. 270 (154 N. W. 839, 157 N. W. 782).

There does not seem to be any adjudication by the Wisconsin court of the effect of the 1931 amendment. It may have been intended to clear up the uncertainty concerning the rights of insured's trustee in bankruptcy to a policy payable to a married woman but reserving the right to change the beneficiary. *Cf. In re Grant,* 21 Fed. (2d) 88, with *Cannon* v. *Lincoln Ins. Co.,* 208 Wis. 452 (248 N. W. 320). But even if the amendment, properly interpreted, requires the consent of a married woman to a change of beneficiary in spite of a contrary provision in the policy, yet to require her consent to a surrender notwithstanding reservations to the contrary would put restrictions into the policy evidently not intended by the legislature. We cannot give the Wisconsin statute the interpretation contended for by the plaintiff.

Since the result would be the same under the laws of either State, it is unnecessary to decide whether the policy is a Michigan or Wisconsin contract.

In accordance with the terms of the policy, the surrender of the policy by the insured constituted a cessation of all rights of the plaintiff thereunder. Judgment affirmed, with costs to appellee.

NELSON SHARPE, C. J., and POTTER, NORTH, FEAD, WIEST, BUTZEL, and BUSHNELL, JJ., concurred.