## NIELSEN v. GENERAL AMERICAN LIFE INS. CO.
### No. 1422.

Circuit Court of Appeals, Tenth Circuit.
March 24, 1937.

Francis C. Wilson, of Santa Fe, N. M. (John C. Watson, of Santa Fe, N. M., on the brief), for appellant.

Carl H. Gilbert, of Santa Fe, N. M. (M. W. Hamilton, of Santa Fe, N. M., and Allen May and J. R. Burcham, both of St. Louis, Mo., on the brief), for appellee.

Before LEWIS, PHILLIPS, and BRATTON, Circuit Judges.

BRATTON, Circuit Judge.

This action instituted by Catherine W. Nielsen against General American Life Insurance Company involves two policies of life insurance.

Missouri State Life Insurance Company issued both policies insuring the life of William W. Nielsen. The first contained a provision that it could be exchanged while in force to any other nonparticipating form of policy in use by the company at the time the original policy was issued, except to a continuous installment form, on condition (1) that the new policy should be written at the same age, bear the same date, and be for an amount not in excess of the original policy, (2) that, if the premium rate per $1,000 was not thereby diminished, the change might be made without medical examination on payment of such amount as should be required by the company, but, if the premium rate per $1,000 was thereby diminished, evidence of insurability satisfactory to the company should be furnished, and adjustment should be made of the difference between the cash values of the respective policies; and (3) that all parties in interest should join in the request and execute all papers required by the company. It contained a further provision that, in case of death by self-destruction within one year from the date of issue, liability should be limited to an amount equal to the premiums paid. The policy was surrendered to the company and destroyed in part. The second contained a similar provision respecting suicide, except that the period was two years from the date of issue.

By contract the General American Life Insurance Company subsequently assumed all policies of Missouri State Life Insurance Company which were in force according to their terms and on the books of such company on August 28, 1933. Insured committed suicide long after the expiration of the one-year period contained in the first policy, but less than two years after the date on which the second policy was issued. Proof of death was submitted. The company tendered an amount equal to the premiums paid on the second policy and denied liability otherwise.

Trial by jury was waived. The court found that the purpose of insured in surrendering the first policy and making application for the second was to pay off his indebtedness to the company secured by a lien against the first policy, to secure the remainder of the surrender value in cash, and to pay the first premium on the new policy out of it; that the second policy was not issued under the exchange provision; that it was a separate and distinct contract; and that the provision contained in it relating to suicide was operative and limited recovery to the amount of premiums paid. The judgment was confined to that sum, it having been deposited in the registry of the court. Plaintiff appealed.

The first challenge lodged against the judgment is that the second policy was merely a continuation of the first under the provision authorizing exchange; that the suicide provision in the second was without effect, and therefore plaintiff was entitled to recover the full amount of the insur-

92

ance. Each policy was for $10,000 and the two bore the same number. The first was dated May 26, 1922. It was nonparticpating until the insured reached the age of sixty and contained disability and waiver of premium provisions. The annual premium of $297.90 was payable on May 22d. At its anniversary in 1932, the policy had an accrued cash surrender value of $2,-140. Insured had borrowed $1,860 from the company which was secured by a pledge of the policy. Insured and a general agent of the Missouri State Life Insurance Company had a conference on June 1, 1932, in which insured stated that the loan had become a financial burden. He referred to the annual premium, to the annual interest of $110, and to the fact that in case of death the loan would be deducted from the face of the policy; and he stated that in effect he was paying such premium and interest for protection of only $8,000. The agent explained the method which the company had adopted to rewrite a policy where the insured had become overburdened with loan, and he quoted applicable rates. By conference, calculation, and comparison, insured ascertained that he could surrender the original policy, pay the loan out of the money receivable on surrender, obtain a new policy for $10,000, pay the first annual premium on it out of the balance of such money, and thus have protection of $10,-000 instead of $8,000 for about $100 less per year. He thereupon signed and delivered two writings to the agent on forms furnished by the company, both bearing date June 1st. The first bore the name of the company at the top, stated the number of the original policy and the name of the insured. It was denominated "policyholder certificate," and read: "To the Policyholder: Our offer to adjust certain policies encumbered with heavy loans so as to free them from indebtedness is intended as a service to enable the policyholder to keep insurance which he would otherwise have to drop. If you can keep up your policy as it is and arrange in the course of time to repay the loan it is to your advantage to do so and not to your advantage to change to a policy which must be issued at a higher age. Our representatives are instructed to explain this fact to you so that you may be in a position to decide for yourself. I have read and understand the above statement and desire to have my policy changed to cancel the indebtedness against it." The other was an application addressed to the company. It

identified the policy by number and read: "I hereby request the Missouri State Life Insurance Company to change the above numbered policy as follows: Change to ordinary life N. P. Table D attained age. Beneficiary Catherine W. Nielsen, Wife. Contingent beneficiaries, Marie R. Nielsen, Mother, and Peter E. Nielsen, Brother. Equally or to the survivor of them issue date new policy May 22nd, 1932. This is supplemental to the application on which the policy herein referred to was issued, and it is understood that this forms a part of the contract in the same manner as said application." The original policy was delivered to the agent at the same time to be forwarded to the company. The agent and insured determined that the cash surrender value would not be sufficient to discharge the loan and pay the first annual premium on a new policy of the kind for which application was made; that there would be a deficit of about $24.50, and it was agreed that the agent should send his personal check to the company for that amount. The agent forwarded the two writings and the policy to the company with his check. The company notified the agent that it would not issue a policy on the Table D basis as set forth in the application. The agent then explained to insured that he could not secure a policy containing total disability and double indemnity provisions. Insured "figured it out," and then signed another application, dated June 16th, as follows: "I hereby request the Missouri State Life Insurance Company to change the above numbered policy as follows: To the ordinary Life Non-Participating plan with Double Indemnity benefits with register date May 22, 1932. Cancel Total Disability Waiver of Premium and Life Income benefits. Premiums payable annually the first year and quarterly thereafter. I elect the Automatic Loan Option. This is supplemental to the application on which the policy herein referred to was issued, and it is understood that this forms a part of the contract in the same manner as said application." Insured insisted on a medical examination. It was conducted and the report submitted to the company. The new policy then issued; the old one was destroyed; and the cash surrender value of $2,140 was applied, $1,860 to discharge of the loan, $269.90 to payment of the first annual premium on the new policy, and $10.10 paid to insured in cash.

The provision authorizing exchange expressly provided that the new policy

should bear the same date and be written at the same age as the old. Neither was done. The first application submitted expressly requested that the new policy issue at the attained age, and that its issue date be May 22, 1932. The second application requested that it issue with register date May 22, 1932. Insured sought these changes in departure from the provision authorizing exchange and they were substantial because they effected a difference of moment to the company and the insured. If the policy had issued at a recited age younger than that attained, the rate based thereon would have been less than that applicable to the attained age and that would have necessitated the transfer to the new policy of a sufficient amount of the cash value of the old· to create the requisite reserve for the new policy. But the issuance of the policy at the attained age would permit the correct increase rate of premium, payment of the loan, and release of the entire cash value in excess of the loan. That was· what insured desired, and he sought the change in date and age in order to accomplish that end. Furthermore, the exchange provision limited the privilege to a nonparticipating form of policy in use by the company at the time the first policy issued, except a continuous installment form. The new policy was an ordinary life, profit-sharing after twenty years. The company did not write that form at the time the original policy was issued. Manifestly, the new policy was not one which the insured had the right to demand under the exchange provision. He could not have compelled its issuance in fulfillment of obligations fixed by that provision. It was a separate and distinct contract resulting from negotiation and a new meeting of the minds. Aetna Life Ins. Co. v. Dunken, 266 U.S. 389, 45 S.Ct. 129, 69 L.Ed. 342; Gans v. Aetna Life Ins. Co., 214 N.Y. 326, 108 N.E. 443, L.R.A.1915F, 703.

Plaintiff relies strongly upon the case of Silliman v. International Life Ins. Co., 131 Tenn. 303, 174 S.W. 1131, L.R.A.1915F, 707, but it is distinguishable. There no new application was made. The insured declined to submit a certificate of health and asserted his right to the new policy under the terms of the old. He advised the company that he had consulted the insurance department of the state and that refusal to issue the policy would result in a revocation of the company's license to transact business in the state. The com-

pany yielded and issued the new policy in strict conformity with the exchange provision. The case of Western & Southern Life Ins. Co. v. Shelby (Ind.App.) 194 N.E. 197, bears a like mark of dissimilarity in that the second policy issued in strict conformity to the provision authorizing exchange. In Philadelphia Life Ins. Co. v. Erwin, 165 Va. 469, 182 S.E. 209, a term policy was surrendered and exchanged for an ordinary life policy upon the same application and the same medical examination; and the exchange was made in accordance with the original contract. And in Norse v. General American Life Ins. Co., 130 Neb. 37, 263 N.W. 676, the second policy was issued at the same age and bore the same date as the original, although more than ten years intervened between the dates of issue; and no new application was made or new medical examination submitted. The essence of the decision in each of those cases was that in harmony with the intention of the parties the subsequent policy issued under the provision authorizing exchange. Here the court expressly found that the purpose of insured in surrendering the old policy and making application for the new was to discharge an indebtedness which he owed the company, acquire the remainder of the surrender value in cash, and pay the premium on the new policy out of it. That finding is supported by substantial evidence, and under the often repeated rule of this court cannot be overturned on appeal.

It is urged that the company could and did waive the requirements contained in the exchange provision that the new policy should issue as of the ·date and age of the old and that it should be in a form used by the company at the time the original policy was written. It may be conceded that the company could waive such provisions. But the court found that the· purpose in surrendering the old policy and making application for the new was to discharge insured's debt and pay the first premium on the new policy out of the remaining cash. That was equivalent to a finding that the parties did not intend to act under the exchange provision; and it necessarily negated the view that the company intended at the same time to invoke some of its provisions while waiving others. Again, the finding is supported by substantial evidence and is conclusive here.

The further argument is advanced that the first policy could not be cancel-

ed by agreement of the insurer and insured without the consent of the beneficiary; that she did not give consent; and that it must be held that the second policy issued under the exchange provision. The policy provided that, if default was made in payment of premiums after the first two policy years, insured should have the right during the grace period to surrender the policy at the home office of the company for its cash value; and, further, that insured could, without the consent of the beneficiary, receive every benefit, exercise every right, and enjoy every privilege conferred on him by its terms. In the absence of a provision reserving to the insured the right to surrender the policy, the beneficiary acquires a present vested right upon its issue which cannot be taken away without his consent. But this policy reserved the right to the insured to surrender it after completion of payment of premiums for the first two policy years and to receive the surrender value in cash at any time during the grace period; and further to receive any benefit, enjoy any privilege, or exert any right conferred by its terms, without the consent of the beneficiary. Payment of premiums for the first two policy years had long since been completed; the premium due in 1932 was unpaid; and the surrender was effected during the grace period. The beneficiary acquired a mere expectancy which could be extinguished by the surrender of the policy in the manner and within the time authorized by its terms. Supreme Council of Royal Arcanum v. Behrend, 247 U.S. 394, 38 S.Ct. 522, 62 L.Ed. 1182, 1 A.L.R. 966; Mutual Ben. Life Ins. Co. v. Swett (C.C.A.) 222 F. 200, Ann.Cas.1917B, 298; Self v. New York Life Ins. Co. (C.C.A.) 56 F.(2d) 364; Southern Lumber Co. v. Pearce (C.C.A.) 60 F.(2d) 477; Cooper v. West, 173 Ky. 289, 190 S.W. 1085; Fischer v. Northwestern Mut. Life Ins. Co., 267 Mich. 6, 255 N. W. 337; La Londe v. Roman Standard Life Ins. Co., 269 Mich. 330, 257 N.W. 834; Baxter v. Old National City Bank, 46 Ohio App. 533, 189 N.E. 514; Illinois Bankers' Life Ass'n v. Rhodes, 147 Ark. 191, 227 S.W. 403; Antley v. New York Life Ins. Co., 139 S.C. 23, 137 S.E. 199, 60 A.L. R. 184.

The final contention which merits consideration is that the original policy was executed and delivered in Missouri and is therefore governed by the law of that state; that the second policy, being an extension or continuation of the first, is likewise governed by the same law; and that under the law of Missouri suicide is not a defense in a suit on a policy of insurance, unless it is shown to the satisfaction of the court or jury trying the case that the insured contemplated suicide at the time he made the application. Section 5740, Revised Statutes of Missouri 1929 (Mo.St. Ann. § 5740, p. 4385). The second policy was a separate, detached, and distinct contract. It differed in some respects from the last application submitted. It was delivered and accepted in New Mexico where insured resided. That constituted consummation there. In the absence of an express provision or any fact or circumstance indicating that the parties intended that the law of Missouri should apply, all matters relating to the interpretation and validity of the policy are determined by the law of New Mexico. Brown v. Ford Motor Co. (C.C.A.) 48 F.(2d) 732; Mutual Benefit Health & Accident Ass'n v. Baldridge (C. C.A.) 70 F.(2d) 236.

The judgment must be affirmed.